KENNEY F. DEANS, APPELLEE, v. CLYDE R. WEST ET AL., APPELLANTS, SCOTTS BLUFF COUNTY, NEBRASKA, APPELLEE.

203 N. W. 2d 504

Filed January 19, 1973. No. 38516.

Holtorf, Hansen, Kortum, Kovarik & Nuttleman, for appellants.

James R. Hancock, for appellee Deans.

Marvin L. Holscher, for appellee Scotts Bluff County.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

McCOWN, J.

This is an action to enjoin the construction and operation of a mobile home court on the ground that this use of the property is in violation of county zoning regulations of Scotts Bluff County. The district court sustained plaintiff's motion for summary judgment and enjoined the defendants from use of the land as a mobile home court and from any further building thereon without a building permit. The defendants have appealed.

Plaintiff and defendants are the owners of adjoining tracts of land located in the southwest quarter of Section 10, Township 22 North, Range 55 West of the 6th P.M., Scotts Bluff County, Nebraska. Defendants' land is an irregular-shaped tract of approximately 11½ acres. Both plaintiff's and defendants' properties are "near to and north of the City of Scottsbluff."

On October 5, 1970, the Scotts Bluff County board adopted county zoning and subdivision regulations which purported to establish some 12 zoning districts. On August 17, 1971, the Scotts Bluff County planning commission denied a request to rezone defendants' land to a "Mobile Home District" classification. Notice of appeal to the board of county commissioners was filed. On September 13, 1971, the minutes of the county board show that the board accepted the opinion of the county attorney that the county planning and zoning authority was not legally constituted and determined that a hearing should not be held on the defendants' appeal. Commencing on September 17, 1971, the defendants began construction of a mobile home park on their land. At approximately the same time, the planning commission and county board commenced procedures for adoption of a comprehensive development plan for the county and the adoption of the same zoning regulations and subdivision regulations purportedly adopted in the fall of 1970. On October 12, 1971, the county planning commission adopted a comprehensive development plan and again adopted the zoning and subdivision regulations and recommended that the county board adopt them. On October 13, 1971, the county board set a public hearing on the matters, and published notice. Following the public hearing on October 26, 1971, the county board unanimously adopted the comprehensive development plan and the zoning and subdivision regulations. The zoning and subdivision regulations were published in loose-leaf pamphlet form, but the official zoning map was not published as a part of the pamphlet or in any other way. A copy of the official zoning map was filed with the county clerk.

The zoning and subdivision regulations adopted by the county board on October 26, 1971, were identical to the regulations purportedly adopted in 1970, except for the cover and identifying and transmittal documents. The regulations established 12 zoning districts, one of

which was a mobile home district. There is no mobile home district on the official zoning map. The regulations provided that the boundaries of the districts "are hereby established as shown on the Official Zoning Map," which was adopted by reference. The regulations also provided: "The Official Zoning Map shall be identified by the signature of the Chairman of the County Board attested to by the County Clerk, and bearing the seal of the county under the following words: 'This is to certify that this is the Official Zoning Map referred to in Section 2 of Resolution # —— of Scotts Bluff County, Nebraska', together with the date of the adoption of this regulation." The official zoning map in evidence, exhibit 2, is not identified as required by the regulations nor is it certified and its title is "Proposed Zoning Plan."

The regulations themselves do not identify nor set out the boundaries of any district and the location and boundaries of a zoning district could only be determined by reference to an official zoning map. The regulations do set out various rules for interpretation where uncertainty exists as to the boundaries of districts as shown on the official zoning map. These rules, however, apply only when the boundaries approximately follow streets, highways, alleys, platted lot lines, city limits, railroad lines, or shore lines. They can be applied only by reference to the official zoning map in any event.

On the basis of the pleadings, affidavits, and exhibits, the plaintiff and defendants both moved for summary judgment. The district court found that the zoning and subdivision regulations adopted in 1970 and 1971 and exhibit 2, the official zoning map, were valid enactments and a valid exercise of the zoning power of Scotts Bluff County, and granted the injunction prayed for by the plaintiff.

The first issue with which we are faced involves the validity of the proposed zoning and subdivision regulations adopted October 5, 1970. The record establishes

that no comprehensive development plan was adopted by the county board prior to October 26, 1971. Section 23-114.03, R. R. S. 1943, which became effective May 22, 1967, provides: "Zoning regulations shall be adopted or amended by the county board only after the adoption of the county comprehensive development plan by the county board * * *."

In Bagley v. County of Sarpy, *ante* p. 393, 202 N. W. 2d 841, we held that timely objection by a litigant with standing may nullify a rezoning resolution by a county board that has not adopted a comprehensive development plan conformable to statute.

Three and a half years without adopting a comprehensive development plan was clearly unreasonable and the zoning and subdivision regulations purportedly adopted in October of 1970, before a comprehensive development plan was adopted, were therefore invalid. This failure may well be the basis for the county attorney's advice to the board which led to the adoption of a comprehensive development plan on October 26, 1971, and the attempted readoption of the zoning and subdivision regulations.

While one crucial defect of failing to adopt a comprehensive development plan was remedied in 1971, other defects remained. The first of these involves the "official zoning map" which was apparently the same both in 1970 and in 1971. That map covers the entire County of Scotts Bluff, an area of approximately 36 miles by 21 miles. There is no showing of any section numbers nor of any township or range identification. The scale of the map is shown only by a comparison of 1, 2, and 3 miles to 4,000, 8,000, 12,000, and 16,000 feet. There is no measure of scale by the inch. A rough guess would approximate it at 5,000 feet to the inch.

The zoning judisdiction of Scottsbluff and of Gering, both of which are first class cities, is shown on the map as 1 mile beyond the city limits, although the zoning jurisdiction of the City of Scottsbluff as of June 7, 1967,

extended 2 miles beyond the city limits.

There are apparently 20 separate zoning districts marked on the map, and the boundary lines of every one of them in one or more places depart from roads or other boundaries referred to in the regulations, without any means of determining where those boundaries are fixed, and with no indication of courses or distance.

The official zoning map is marked "Proposed Zoning Plan" and is not identified or certified as required by the regulations. Probably the most damning commentary on the insufficiency of the map is the fact that it is impossible to locate either the plaintiff's or defendants' property on it, even though both properties carry a complete legal description in the pleadings. It cannot even be determined whether the defendants' property is inside or outside the 2-mile zoning jurisdiction of the City of Scottsbluff. Neither is there any affirmative evidence that the City of Scottsbluff is not exercising, or has not exercised, control over the 2-mile zoning area outside its city limits by the adoption or amendment of a zoning ordinance. If the defendants' property is within the 2-mile zoning jurisdiction of the City of Scottsbluff and the city has adopted or amended a zoning ordinance with respect to the territory outside the corporate limits and inside its zoning jurisdiction, then the city is exercising control and any county zoning regulations are superseded. See § 23-114, R. R. S. 1943.

The statutes authorize the county board to divide a county into districts and to adopt uniform regulations. The statutes refer only to "an official map or maps indicating the districts * * *." Obviously, the sufficiency of any map must be determined in conjunction with the zoning regulations of which it is a part. Where the boundaries of the zoning districts as fixed by the county board are fully and accurately specified and described in the zoning regulations, a map is simply a supplementary graphic representation. In this case however,

the regulations do not locate any district nor describe the boundaries of any district. The location and boundaries of a zoning district can be determined only from the map. In such a case, an official zoning map or maps must contain sufficient information to permit a person of ordinary intelligence to locate on the map any specific legally described tract of land, and to determine with reasonable accuracy and precision the boundaries of any zoning district. If interpretative rules contained in any zoning regulations are insufficient to determine particular zoning boundaries with precision, then courses and distances should be specified on the map. Exhibit 2, the official zoning map here, is inadequate in many respects. It is also not identified and certified as required by the regulations. It does not meet the requirements of an official zoning map for purposes of county zoning regulations.

Section 23-114.03, R. R. S. 1943, provides in part: "An official map or maps indicating the districts and regulations shall be adopted and within fifteen days after adoption of such regulations or maps, they shall be published in book or pamphlet form or in a legal newspaper published once in and of general circulation in the county. Such regulations shall also be spread in the minutes of the proceedings of the county board and such map or maps filed with the county clerk."

In this case, the regulations were published in book or pamphlet form but the official zoning map was not published as a part of the pamphlet or in any other way, although a copy of it was filed with the county clerk. It is undisputable from the record that without the official zoning map it could not be ascertained from the zoning regulations what regulations and restrictions were prescribed or what uses were permitted for any given parcel of land in the zoning area. Under almost identical statutory language, this court has held that any map, plat, or zoning plan attached to, made a part of, or referred to, in a zoning resolution must be pub-

lished in book or pamphlet form or in a newspaper as required by statute. See Board of Commissioners v. McNally, 168 Neb. 23, 95 N. W. 2d 153. That case makes it clear that a statutory provision such as this requiring that an official zoning map adopted by a county board shall be published in book or pamphlet form or in a legal newspaper is mandatory. That case also held that a failure to comply with the statute and publish the map prevents the zoning from becoming valid, effective, or enforceable. An official zoning map, adopted by a county board as a part of county zoning regulations which incorporate the map by reference, must be published in book or pamphlet form or in a legal newspaper as required by section 23-114.03, R. R. S. 1943. Failure to comply with the statutory requirements for publication of the official county zoning map prevents the zoning regulations of which the map is a part from becoming valid, effective, or enforceable, at least where the boundaries of the zoning districts can only be determined from the map. The zoning regulations and map involved here were invalid and conferred no rights and imposed no duties or obligations.

The decree granting plaintiff an injunction against defendants was erroneous. The defendants' motion for summary judgment should have been granted and the cause dismissed.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.