COUNTY OF DAKOTA, NEBRASKA, APPELLEE, V. WORLDWIDE TRUCK PARTS AND METALS, A CORPORATION, ET AL., APPELLANTS.

511 N.W.2d 769

Filed February 18, 1994.   No. S-91-669.

Douglas E. Flom, of Corbett, Anderson, Corbett, Poulson, Flom & Vellinga, for appellants.

Brien P. O'Brien and, on brief, Kurt A. Hohenstein for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

HASTINGS, C.J.

Following an action in equity brought by Dakota County, Worldwide Truck Parts and Metals, Jack P. Lemmon, and Marilyn J. Lemmon appealed an order of the district court enjoining them from using the premises as being in violation of the county zoning regulations. Worldwide and the Lemmons appeal, alleging a variety of errors, including the allegation that the county had no jurisdiction under the zoning laws existing over the premises in question. We have reviewed the entire record, the briefs, and the arguments of counsel, which we must do, but because we determine this appeal on the basis of jurisdiction, there is no need to discuss the other errors. We reverse the order and dismiss the cause.

An action for an injunction sounds in equity. *Village of Brady v. Melcher*, 243 Neb. 728, 502 N.W.2d 458 (1993); *Bauer v. Lancaster Cty. Sch. Dist. 001*, 243 Neb. 655, 501 N.W.2d 707 (1993).

In an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court,

provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *K N Energy, Inc. v. Cities of Broken Bow et al.*, 244 Neb. 113, 505 N.W.2d 102 (1993); *Bauer v. Lancaster Cty. Sch. Dist. 001, supra.* However, with regard to questions of law, an appellate court is obligated to reach a conclusion independent from the trial court's conclusion. *Kopecky v. National Farms, Inc.*, 244 Neb. 846, 510 N.W.2d 41 (1994).

The Dakota County zoning resolutions at issue in this case became effective on March 13, 1978. The property in question was zoned R-10 (residential, with 10,000 square feet minimum lot size). For many years prior to the effective date of the resolutions, the property had been operated as a used parts and salvage business by Gilbert VandeMheen. On two or three occasions, a private contractor came to the property with a portable smelter for processing accumulated aluminum.

In 1979, the property was purchased from VandeMheen by Quad States, Inc., and operated by Worldwide, a division of Quad States. Prior to the purchase, Quad States' president, Jack Lemmon, investigated the operation at that location and determined that the business included selling new or used trucks, selling used parts, and processing metals of all types. Lemmon testified that he did not check to determine whether there were any ordinances which would affect the use of the property. From 1979 to 1985, Worldwide did not engage in any smelting of metals. In 1985, Worldwide purchased a movable aluminum smelter and began smelting aluminum. Approximately 1 year later, a second smelter was purchased. Lemmon estimated that at maximum capacity, the operation could process 10,800 pounds a day. In 1987, Nebraska's Department of Environmental Control advised Worldwide that a permit was necessary for the smelter and that it would have to be operated in a controlled structure. Worldwide had a metal pole building constructed to house the smelting operation. In April 1988, a large amount of polyurethane caught fire and burned on the property. The Dakota County Attorney brought criminal charges against Lemmon for unauthorized open

burning and maintaining a nuisance. In March 1989, Lemmon pled no contest to the charges and entered into a nolo contendere plea agreement and order of abatement in which he agreed to take remedial steps to prevent future problems with stockpiled polyurethane. That agreement provided that "nothing contained herein shall prohibit the future smelting of aluminum . . . or incinerating of polyurethane foam provided the operations are conducted within the constraints of state and federal law, and any local ordinance or regulation."

In May 1989, the state Department of Environmental Control filed charges concerning air pollution caused by the April 1988 fire and opacity violations occurring in September 1988 and January 1989. Worldwide entered into a consent decree and paid a $12,556 fine. In August 1989, the Dakota County Attorney filed this action, alleging that the use of the property was a nonconforming and nonpermitted use under Dakota County zoning ordinances and in violation of Neb. Rev. Stat. § 14-406 (Reissue 1991). Worldwide answered and asserted as affirmative defenses that the county did not have authority to regulate the property in question because it was within 2 miles of the city limits of South Sioux City and that the county was barred under the doctrine of laches because of inexcusable delay in asserting its rights. At the conclusion of the trial, the district court found that the county was not estopped from enforcement of its zoning resolutions, that the zoning authority of South Sioux City was not mandatory, and that the use of the property was "an impermissible expansion of the non-conforming use."

The district court found that Dakota County had jurisdiction over the Worldwide property, noting that

> [t]he premises was zoned by the plaintiff in March, 1978 and has been so zoned since that time. While the City of South Sioux City may have had the statutory power to zone the premises, zoning was not mandatory and an agreement between the Plaintiff and the City as to that respective zoning is not prohibited. The Plaintiff has exercised a zoning jurisdiction over the premises, and the Defendant recognized that jurisdiction by applying for a building permit and later in seeking an application to

change the zoning, the application going to the Plaintiff.

The authority for a city of the first class, such as South Sioux City, to exercise extraterritorial jurisdiction is found in Neb. Rev. Stat. § 16-901 (Reissue 1991), which states in pertinent part:

> Any city of the first class may apply by ordinance any existing or future zoning regulations, property use regulations, building ordinances, electrical ordinances, plumbing ordinances, and ordinances authorized by section 16-240 to the unincorporated area two miles beyond and adjacent to its corporate boundaries with the same force and effect as if such outlying area were within the corporate limits of such city . . . .

Although the zoning authority granted by § 16-901 is not mandatory, South Sioux City chose to exercise its authority under this statute, as evidenced by ordinance No. 528, passed and approved on September 19, 1967. That ordinance states:

> That the zoning ordinances, property use regulations, building ordinances, electrical ordinances and plumbing ordinances as the same now exist or may hereafter be amended shall be and the same are hereby extended under the authority of the revised statutes of Nebraska, Section 16-901 and Section 16-902 as amended by LB 521, passed and approved by the 1967 Legislature of the State of Nebraska to an area two miles beyond and adjacent to the corporate boundaries of the City of South Sioux City, Nebraska with the same force and effect as if outlying area were within the corporate limits of said city . . . .

The record contains a certification by the city clerk of South Sioux City that ordinance No. 528 was in full force and effect as of May 15, 1990. The record also contains ordinance No. 82-15, passed and approved on July 20, 1982, and ordinance No. 89-18, passed and approved on August 15, 1989, annexing parcels of real estate located outside of the corporate limits of South Sioux City. Exhibit 7, a map prepared by Schieuer Surveying, shows the locations of the properties annexed by those ordinances. Surveyor Douglas Mordhorst testified that as to the property annexed by ordinance No. 82-15, the legal description did not "call out" whether the property line was to

be established from the centerline or the right-of-way line. As a result, he established two separate easterly points for that annexation, from which pie-shaped arcs were drawn to indicate the 2-mile extraterritorial jurisdiction of South Sioux City. One of those arcs encompasses the Worldwide property in its entirety, while the other includes most of the property, but intersects the smelter and incinerator building. The arc established by reference to the property annexed by ordinance No. 89-18 again encompasses almost all of Worldwide's property, including the smelter and incinerator building. Thus, exhibit 7 indicates that as of July 20, 1982, most or all of Worldwide's property was included within South Sioux City's extraterritorial jurisdiction, and as of the August 15, 1989, annexation, that part of the property which included the smelter and incinerator building was decisively within the 2-mile limit.

Randy Geeting, zoning official for South Sioux City, was asked if § 11-102 of the South Sioux City Code requires the city to take action to extend its zoning jurisdiction 2 miles in all directions. That section of the zoning chapter provides:

> The provisions of this Chapter and the Building Regulations Chapter shall apply within the corporate limits of the Municipality and within the territory beyond said corporate limits as now or hereafter fixed, for a distance of two (2) miles in all directions, as established on the two (2) maps entitled *"Use and Height District Map of South Sioux City,"* as the same may be amended by subsequent annexation.

Geeting replied:

> In the past they have had a pretty good working relationship with the county, also with the City of Dakota City in all directions, they would be overriding areas especially with Dakota City to the south and to the west have tried to work with the county in coming up with a defined line where you could see what was definitely on one side and what was definitely on the east.

Although § 11-102 of the city code also provides that all amendments which are authorized by ordinance are to be posted on the district maps immediately upon their effective

dates, Geeting stated that 2-mile projections from the annexations authorized by ordinances Nos. 82-15 and 89-18 were not posted on the zoning map because the city "[n]ever had the mapping as far as this type of mapping to go out that far."

While Geeting's testimony indicates that an informal agreement existed between the city and the county as to the jurisdictional demarcation, it is clear that the city did exercise its zoning authority within the extraterritorial jurisdiction. Geeting identified exhibit 49 as seven separate ordinances which rezoned areas within that jurisdiction to "modified industrial" to accommodate salvage operations. Thus, South Sioux City not only evidenced the intent to exercise extraterritorial zoning jurisdiction, by virtue of ordinance No. 528 and § 11-102 of the city's zoning regulations, but it exercised that authority in fact, as indicated by the ordinances contained in exhibit 49. However, that authority was evidently selectively exercised by agreement with the county, at least prior to November 1989.

On November 7, 1989, the city passed resolution No. Y-166, which established the westerly boundary of its extraterritorial jurisdiction approximately 2,000 feet to the east of the 2-mile limit. However, if that resolution was a prerequisite to Dakota County's authority, it came too late, since this action was filed on August 30, 1989.

Further, article 6 of the South Sioux City Code, entitled "Amending the Zoning Chapter," provides that the zoning chapter and the official map may be amended, but also that "[a] public hearing shall be held by the Governing Body before adoption of any proposed amendment to this Chapter." Geeting testified that no public hearings were held before the resolution was adopted, but stated that he did not believe they were necessary. The preamble to resolution No. Y-166 states that "the City of South Sioux City has by ordinance applied zoning and property use regulations to the unincorporated area two miles beyond and adjacent to its corporate boundaries" and goes on to state that "it is necessary and desirable to define the westerly boundary of said extraterritorial jurisdiction." Although the resolution could arguably be termed a

"clarification," it could also be considered an amendment requiring a public hearing, since it does in fact decrease the area of the city's jurisdiction as asserted in ordinance No. 528. Geeting admitted that no survey work was done to determine whether the line as established by resolution No. Y-166 was outside 2 miles or within 2 miles of the existing westerly boundary of South Sioux City. He also agreed that a distance of 2 miles from the westerly boundary of the annexed portion of the city would establish a line some distance west of the line established by that resolution. Thus it appears that the effect of resolution No. Y-166 was to change the city's zoning boundary, rather than to determine the location of the 2-mile boundary line. "[G]enerally, an ordinance cannot be amended, repealed, or suspended by a resolution." *Sommerfeld v. City of Seward*, 221 Neb. 76, 82, 375 N.W.2d 129, 133 (1985).

The county does not cite any authority to support the propositions that the city may selectively exercise authority over property within its extraterritorial jurisdiction or that the city has not exercised authority unless it acts to zone a particular piece of property. Neb. Rev. Stat. § 23-114 (Reissue 1991) provides in pertinent part:

> The county board shall have power to create a planning commission with the powers and duties set forth in sections 23-114 to 23-114.05 . . . ; make, adopt, amend, extend, and implement a county comprehensive development plan; and adopt a zoning resolution, which shall have the force and effect of law. The zoning resolution may regulate and restrict . . . the uses of land for agriculture, forestry, recreation, residence, industry, and trade . . . or other uses in the unincorporated area of the county. . . . *Provided,* the powers created by this section shall not be exercised within the limits of any incorporated city or village nor within the area over which a city or village has been granted zoning jurisdiction and is exercising such jurisdiction. At such time as a city or village exercises control over an unincorporated area by the adoption or amendment of a zoning ordinance, its regulations shall supersede those of the county.

This statute was addressed in *Deans v. West,* 189 Neb. 518,

203 N.W.2d 504 (1973), in which we examined whether zoning and subdivision regulations and an official zoning map were valid enactments and a valid exercise of the zoning power of Scotts Bluff County. We found that the exhibit identified as the official zoning map did not meet the requirements of an official zoning map for purposes of county zoning regulations and that "without the official zoning map it could not be ascertained from the zoning regulations what regulations and restrictions were prescribed or what uses were permitted for any given parcel of land in the zoning area." *Id*. at 524, 203 N.W.2d at 508. With regard to the insufficiency of the map, we also found:

It cannot even be determined whether the defendants' property is inside or outside the 2-mile zoning jurisdiction of the City of Scottsbluff. Neither is there any affirmative evidence that the City of Scottsbluff is not exercising, or has not exercised, control over the 2-mile zoning area outside its city limits by the adoption or amendment of a zoning ordinance. *If the defendants' property is within the 2-mile zoning jurisdiction of the City of Scottsbluff and the city has adopted or amended a zoning ordinance with respect to the territory outside the corporate limits and inside its zoning jurisdiction, then the city is exercising control and any county zoning regulations are superseded.* See § 23-114, R. R. S. 1943.

(Emphasis supplied.) *Id*. at 523, 203 N.W.2d at 507. *West* indicates that a city is exercising control and county zoning regulations are superseded if the city adopts an ordinance with respect to *territory within the extraterritorial jurisdiction*, and it is not necessary that the city designate each particular piece of property within that jurisdiction. Thus, in regard to the instant case, South Sioux City exercised control by adopting ordinances with respect to territory within its extraterritorial jurisdiction, and on the date of the filing of the petition, Dakota County's regulations were superseded. Even if South Sioux City acquiesced to Dakota County's authority by adopting resolution No. Y-166 in November 1989, that resolution is invalid on its face, since it purported to amend the city's asserted zoning authority without a public hearing.

The County of Dakota having no zoning jurisdiction over

the premises, the order of the district court was incorrect and is reversed, and the cause of action is dismissed.

REVERSED AND DISMISSED.