ENTERPRISE PARTNERS, A NEBRASKA GENERAL PARTNERSHIP, APPELLANT, V. THE COUNTY OF PERKINS, A POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, APPELLEE.

619 N.W.2d 464

Filed November 3, 2000.    No. S-99-1096.

Richard A. Dudden, of Padley & Dudden, P.C., for appellant.

Richard H. Roberts, Perkins County Attorney, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Enterprise Partners (Enterprise) brought a declaratory judgment action seeking the declaration of the trial court as to whether two ordinances passed by the Perkins County Board of Commissioners (the Board) were valid. These ordinances attempt to locally regulate livestock confinement facilities by regulating odor and flies emanating from the facilities (Ordinance 98-1) and by preventing the escape of animal waste onto land within the county (Ordinance 98-2). The trial court found generally for the Board and found that both ordinances were valid and enforceable. Enterprise appeals this ruling. This court removed this case from the Nebraska Court of Appeals under the power to regulate the caseloads of this court and the Court of Appeals.

## BACKGROUND

In April 1998, the Board became aware of proposals to build hog confinement facilities in Perkins County. At subsequent meetings of the Board, individuals and public groups expressed concerns about the effect these types of facilities would have on the environment, on the health of the citizens of Perkins County, and the need to prevent these facilities from being built. The Board sent a letter to the Nebraska Department of Environmental Quality (DEQ) voicing its concerns and going on record as opposing the approval of a permit to allow Enterprise to construct a hog confinement facility in Perkins County.

DEQ responded in a letter addressing the Board's concerns and explaining evaluation procedures and the requirements that needed to be met in order for a permit to be issued. DEQ also

pointed out that two of the Board's concerns could not be addressed by DEQ as it did not have the authority to regulate those issues. These issues were the odor and insects and the impact on county roads. DEQ stated that "[t]he Legislature has given counties the authority to implement land use planning and adopt zoning regulations which could govern the location of livestock facilities. Odors, dust and insects are considered to be nuisances and are not regulated by the DEQ." With regard to the impact on county roads, DEQ stated that "[t]his is not an issue which DEQ can address, but as a local issue it may possibly be addressed through load limit restrictions."

Proposed ordinances were submitted to the Board, and discussion was held on December 21, 1998. Ordinance 98-1 attempts to locally regulate livestock confinement facilities by regulating odor emanating from the facility by requiring that certain parts of the facility be covered. By controlling odor, other problems with flies would be avoided. Ordinance 98-2 requires large-scale livestock operations to demonstrate that no livestock waste, liquid or solid, would be carried or washed onto or into county roads, ditches, or properties adjacent to the facility during or following a 25-year storm. This demonstration must also be updated on a yearly basis through inspections by the county. The Board passed both ordinances and increased the civil penalty contained in them from $200 to $5,000 per day for each violation.

Enterprise filed a petition for declaratory judgment arguing that the ordinances are zoning ordinances and were passed in violation of Neb. Rev. Stat. § 23-114.03 (Reissue 1997) which requires the Board to have a county comprehensive development plan before the adoption of zoning regulations. The Board stipulated that it had not adopted a comprehensive zoning plan pursuant to § 23-114.03. Enterprise also asserted that Ordinances 98-1 and 98-2 contain environmental requirements that are specifically reserved for the state. Enterprise also argued that these ordinances deprived it of property without due process of law and that the Board lacked the authority to impose civil penalties.

The trial court ruled that the ordinances were not zoning ordinances but fell within the exercise of police powers granted to

the counties by the Legislature, that no preemption or conflict existed between the ordinances and state statutes, and that the ordinances were not arbitrary or unreasonable and did not violate the constitution. The trial court found generally for the Board and found that both ordinances were valid and enforceable.

## ASSIGNMENTS OF ERROR

Enterprise assigns as error the trial court's finding that (1) Ordinances 98-1 and 98-2 fall within the exercise of police power granted to the counties by the Legislature, (2) the ordinances were not zoning ordinances, (3) the Board did not have to comply with § 23-114.03 when it adopted the ordinances and that they are valid, (4) Neb. Rev. Stat. § 54-2401 et seq. (Reissue 1998) and Neb. Rev. Stat. § 81-1501 et seq. (Reissue 1994 & Cum. Supp. 1996) did not preempt the field in the areas covered by the ordinances, (5) the ordinances were additional to and complimentary to or in aid of the furtherance of § 54-2401 et seq. and § 81-1501 et seq., and (6) the ordinances were not arbitrary and vague.

## STANDARD OF REVIEW

In an appeal from a declaratory judgment, an appellate court, regarding questions of law, has an obligation to reach its conclusion independent from the conclusion reached by the trial court. *Dunn v. Daub*, 259 Neb. 559, 611 N.W.2d 97 (2000); *Callahan v. Washington Nat. Ins. Co.*, 259 Neb. 145, 608 N.W.2d 592 (2000).

## ANALYSIS

Enterprise assigns that the trial court erred in not finding that Ordinances 98-1 and 98-2 were zoning ordinances. Enterprise asserts that the ordinances are zoning ordinances and were passed by the Board in violation of § 23-114.03. Section 23-114.03 provides that "[z]oning regulations shall be adopted or amended by the county board only after the adoption of the county comprehensive development plan by the county board . . . ." Both Enterprise and the Board stipulated that "Perkins County, Nebraska, has not adopted a comprehensive zoning plan pursuant to Neb. Rev. Stat. §23-114, et. seq."

Therefore, Enterprise concludes that Ordinances 98-1 and 98-2 are invalid because the Board does not have a comprehensive development plan. We agree.

A county is a political subdivision of the state having subordinate powers of sovereignty conferred by the Legislature. *Hoiengs v. County of Adams*, 245 Neb. 877, 516 N.W.2d 223 (1994). A political subdivision has only that power delegated to it by the Legislature; a grant of power to a political subdivision is to be strictly construed. *Metropolitan Utilities Dist. v. Twin Platte NRD*, 250 Neb. 442, 550 N.W.2d 907 (1996).

Counties have the statutory authority to regulate the use of lands within their jurisdiction to promote the public health, safety, and welfare pursuant to § 23-114.03 and Neb. Rev. Stat. § 23-174.10 (Reissue 1997). Section 23-114.03 states:

> Zoning regulations shall be adopted or amended by the county board only after the adoption of the county comprehensive development plan by the county board and the receipt of the planning commission's specific recommendations. Such zoning regulations shall be consistent with the comprehensive development plan and designed for the purpose of promoting the health, safety, morals, convenience, order, prosperity, and welfare of the present and future inhabitants of Nebraska, including, among others, such specific purposes as:
>
> (1) Developing both urban and nonurban areas;
>
> (2) Lessening congestion in the streets or roads;
>
> (3) Reducing the waste of excessive amounts of roads;
>
> (4) Securing safety from fire and other dangers;
>
> (5) Lessening or avoiding the hazards to persons and damage to property resulting from the accumulation or runoff of storm or flood waters;
>
> (6) Providing adequate light and air;
>
> (7) Preventing excessive concentration of population and excessive and wasteful scattering of population or settlement;
>
> (8) Promoting such distribution of population, such classification of land uses, and such distribution of land development as will assure adequate provisions for transportation, water flowage, water supply, drainage, sanita-

tion, recreation, soil fertility, food supply, and other public requirements;

(9) Protecting the tax base;

(10) Protecting property against blight and depreciation;

(11) Securing economy in governmental expenditures;

(12) Fostering the state's agriculture, recreation, and other industries;

(13) Encouraging the most appropriate use of land in the county; and

(14) Preserving, protecting, and enhancing historic buildings, places, and districts.

Within the area of jurisdiction and powers established by section 23-114, the county board may divide the county into districts of such number, shape, and area as may be best suited to carry out the purposes of this section and regulate, restrict, or prohibit the erection, construction, reconstruction, alteration, or use of nonfarm buildings or structures and the use, conditions of use, or occupancy of land. All such regulations shall be uniform for each class or kind of land or buildings throughout each district, but the regulations in one district may differ from those in other districts. An official map or maps indicating the districts and regulations shall be adopted, and within fifteen days after adoption of such regulations or maps, they shall be published in book or pamphlet form or once in a legal newspaper published in and of general circulation in the county or, if none is published in the county, in a legal newspaper of general circulation in the county. Such regulations shall also be spread in the minutes of the proceedings of the county board and such map or maps filed with the county clerk. Nonfarm buildings are all buildings except those buildings utilized for agricultural purposes on a farmstead of twenty acres or more which produces one thousand dollars or more of farm products each year.

Section 23-174.10 states:

In any county which has adopted county zoning regulations, the county board, by resolution, may make regulations as may be necessary or expedient to promote the public health, safety, and welfare, including regulations to

prevent the introduction or spread of contagious, infectious, or malignant diseases; to provide rules for the prevention, abatement, and removal of nuisances, including the pollution of air and water; and make and prescribe regulations for the construction, location, and keeping in order of all slaughterhouses, stockyards, warehouses, sheds, stables, barns, commercial feedlots, dairies, junk and salvage yards, or other places where offensive matter is kept, or is likely to accumulate. Such regulations shall be not inconsistent with the general laws of the state and shall apply to all of the county except within the limits of any incorporated city or village, and except within the unincorporated area where a city or village has been granted zoning jurisdiction and is exercising such jurisdiction.

The statutory language in these sections grants extensive powers to counties to regulate their lands. These powers, however, are rooted in zoning, and zoning regulations can be enacted only after adoption of a county comprehensive development plan by a county board. § 23-114.03.

■ Zoning is "the process that a community employs to legally control the use which may be made of property and the physical configuration of development upon the tracts of land located within its jurisdiction." *Ford v. Bd. of Cty. Com'rs of Converse*, 924 P.2d 91, 94 (Wyo. 1996). According to this definition, Ordinances 98-1 and 98-2 are zoning regulations.

In an appeal from a declaratory judgment, an appellate court, regarding questions of law, has an obligation to reach its conclusion independent from the conclusion reached by the trial court. *Dunn v. Daub*, 259 Neb. 559, 611 N.W.2d 97 (2000); *Callahan v. Washington Nat. Ins. Co.*, 259 Neb. 145, 608 N.W.2d 592 (2000).

Ordinance 98-1, regarding fly and odor control, states in pertinent part:

The Commissioners of Perkins County find that large livestock confinement facilities use lagoons to store and treat waste produced by animals in confinement. These lagoons produce odor. The odor is made up of many different kinds of volatile compounds including ammonia, phenol, cresol, volatile fatty acids, aldehydes, bezene,

xylene and hydrogen sulfide. The Commissioners find that there has [sic] been reports of adverse health effects to citizens of other jurisdictions from exposure to the odor. By controlling odors, other problems such as flies can also be avoided.

. . . .

SECTION 2: COVERS REQUIRED

2.01 An owner or operator of a large livestock confinement facility shall not operate a facility in Perkins County unless the following are covered: livestock waste storage containment structures that receives [sic] livestock waste on a regular basis and permanent livestock waste containment structures in which an anaerobic pool is maintained. Facilities that have structures that receive livestock waste only on an [sic] sporadic baisis [sic] due to storm runoff are not required to have covers on their livestock waste containment structures.

SECTION 3: INSPECTIONS

3.01 The County shall have the right to inspect the site to insure [sic] compliance with the provisions of this regulation.

Ordinance 98-1 attempts to legally control the use and development of property by requiring covers to be used for certain land uses and by restricting land use until inspection by the county. Ordinance 98-1 is therefore a zoning regulation.

The Board has been given the power by the Legislature to regulate through the use of zoning but, pursuant to § 23-114.03, zoning regulations shall be adopted only *after* the adoption by the Board of a comprehensive development plan. Why the Board has never adopted a comprehensive development plan is not apparent from the record. Because of the failure of the Board to adopt such a plan, these ordinances are not valid as to Enterprise's hog confinement facilities.

In *Deans v. West*, 189 Neb. 518, 203 N.W.2d 504 (1973), this court concluded that zoning regulations were invalid where the county board adopted zoning regulations before a comprehensive development plan was adopted. In this case, the Board has stipulated that it has not adopted a comprehensive zoning plan pursuant to § 23-114.03. Therefore, we find Ordinance 98-1 to

be invalid and in violation of § 23-114.03 which provides "[z]oning regulations shall be adopted or amended by the county board only after the adoption of the county comprehensive development plan by the county board."

Ordinance 98-2, regarding the prevention of wastes being spilled on county roads, ditches, and property, states in pertinent part:

> The Commissioners find that large scale livestock confinement facilities may present a threat of contamination and destruction of county roads, ditches, and property due to overflow of lagoon and impoundments during and following storms, during operation, and during transport of livestock and livestock waste. To protect the County from such an occurrence.
>
> . . . .
>
> SECTION 2: PREVENTION OF APPLICATION OF LIVESTOCK WASTE ON COUNTY PROPERTY BY LARGE SCALE LIVESTOCK OPERATIONS
>
> 2.01 Prior to construction or operation, an owner or operator of a large livestock confinement facility must demonstrate that the livestock waste, liquid or solid, will not be carried or washed onto or into county roads or ditches or properties adjacent to a facility during or following a 25 year storm.
>
> 2.02 The demonstration will include detailed elevation drawings, a description of the volume and physical characterization of the stored waste, and a hydrogeologic characterization of the facility site. This demonstration will be updated yearly.
>
> 2.03 An owner or operator of a large livestock confinement facility must not allow livestock waste, liquid or solid to be washed, placed, or spilled onto county roads, ditches, or property from the facility or from a truck carrying livestock or livestock waste, or from a pipe carrying liquid livestock waste.
>
> SECTION 3: INSPECTIONS
>
> 3.01 The County shall have the right to inspect the site to insure [sic] compliance with the provisions of this regulation.

■ Ordinance 98-2 attempts to legally control the use and development of property by requiring owners to pass a "demonstration" before any construction or operation of a facility for certain land uses and by restricting land use until inspection by the county. Ordinance 98-2 is also a zoning regulation. According to *Deans v. West, supra,* zoning regulations are invalid where a county board adopts zoning regulations before a comprehensive development plan is adopted. The Board stipulated that it has not adopted a comprehensive zoning plan pursuant to § 23-114.03. The ordinance goes beyond protection of the county's roads and ditches; it also applies to "or properties adjacent to a facility." This language means that if the overflow of the lagoon ran onto a neighbor's property, not owned by the county, Enterprise would be in violation. As previously stated in this opinion, zoning is the process to control the physical configuration of development of tracts of land within its jurisdiction. Ordinance 98-2 is a zoning ordinance and, for the reasons previously stated, is invalid because the Board has never adopted a comprehensive zoning plan as required by § 23-114.03. Therefore, we also find Ordinance 98-2 to be invalid and in violation of § 23-114.03.

## CONCLUSION

Counties in Nebraska have been delegated the power to regulate the use of lands within their jurisdiction to promote the public health, safety, and welfare pursuant to §§ 23-114.03 and 23-174.10 since 1967. A county board may by resolution make regulations as may be necessary to promote the health, safety, and welfare of its public if it has adopted a comprehensive development plan as required by § 23-114.03. Since the Board has failed to adopt a comprehensive development plan, the Board does not have the authority to pass Ordinances 98-1 and 98-2, as they are clearly zoning-related regulations. We therefore conclude that Ordinances 98-1 and 98-2 are invalid.

REVERSED.