[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
The matter before the Court is an action for declaratory and injunctive relief. The Plaintiffs, 25 Assoc., LLC and PRI VI, LLC ("Plaintiffs") filed suit against Edgar Paxson, in his capacity as Building Official for the City of Providence, Samuel Shamoon, in his capacity as Acting Director of the Department of Inspection and Standards of the City of Providence, and the City of Providence (collectively "the City") requesting a declaration of their rights pursuant to the City's Zoning Ordinance, and seeking a permanent injunction enjoining the City from assessing penalties and fines against the Plaintiffs for alleged violations of the Downcity District regulations. Jurisdiction is pursuant to G.L. 1956 §§ 9-30-1 through 9-30-16, G.L. 1956 § 8-2-13, and Super. Ct. R. Civ. P. Rule 65.
 Background and Procedural History
The Plaintiffs own property located at 25 Broadway in Providence, Rhode Island, which is found on the City Assessor's Map at Plat 26, Lot 349 (the Lot). Prior to April of 2003, a gas station building ("Building") stood on the Lot. In April of 2003, the Building was demolished. In response to the demolition project, the City issued Building Inspection Notices of Violation ("NOVs") against the Plaintiffs, asserting that the Building was being demolished without the required permits and approvals from the Downcity Design Review Committee. On May 8, 2003, Plaintiffs were notified that penalties relative to the NOVs would begin to accrue unless they filed an application with the Downcity Design Review Committee in connection with the demolition of the Building. Plaintiffs deny that their Lot is within the boundaries of the Downcity District, and Plaintiffs assert that they are not required to comply with the Downcity District regulations. Plaintiffs filed the instant action seeking both a declaratory judgment and injunctive relief.
On May 27, 2003, a Superior Court Consent Order entered. Pursuant to the Order, the Plaintiffs were permitted to pave the Lot. In addition, fines and penalties for the NOVs were tolled, and deadlines for administrative appeals were also tolled. The Consent Order mandated that the action on the merits be "advanced and consolidated with the hearing on the application for a preliminary injunction pursuant to" Super. Ct. R. Civ. P. Rule 65(a)(2).
The parties have presented this Court with an Agreed Statement of Facts, exhibits, deposition transcripts, and memoranda. The matter is now before the Court for a decision on the merits of the consolidated declaratory judgment and injunction action.
 Facts and Travel
The facts as stipulated by the parties are as follow: Plaintiff, 25 Assoc., LLC, is a limited liability company with a principal place of business at 76 Dorrance Street, Providence, Rhode Island 02903. Plaintiff, PRI VI, LLC is a Rhode Island limited liability company with a principal place of business at 1140 Reservoir Avenue, Cranston, Rhode Island 02920. The Defendant, Edgar Paxson, is the duly appointed Building Official of the City of Providence. The Defendant, Samuel J. Shamoon ("Shamoon"), is the Acting Director of the City of Providence Department of Inspections and Standards (the "Department"). The Defendant, City of Providence, is a municipal corporation duly organized and existing under the laws of the State of Rhode Island
Plaintiffs are the owners of the Lot located at 25 Broadway in Providence, Rhode Island The Lot is described as Assessor's Plat 26, Lot 349. On April 21, 2003 and again on April 24, 2003, the Department issued NOVs against the Plaintiffs claiming that the Building "is being razed without obtaining the necessary approvals and permits from Downcity Design Review Committee." On or about May 7, 2003, the Plaintiffs appealed the NOVs to the Zoning Board of Review pursuant to the provisions of G.L. 1956 §45-24-64 and Section 902.1 of the City of Providence Zoning Ordinance. By letter dated May 8, 2003, Shamoon advised the Plaintiffs that, "penalties provided by Section 806 of the Providence Zoning Ordinance will begin to accrue on May 21, 2003, unless application is made to the Downcity Review Committee for the demolition of the structures previously situated at 25 Broadway."
The text of the Providence Zoning Ordinance designates the Downcity District as one of its overlay zoning districts. The Providence Zoning Ordinance provides that the design of the exterior of all buildings, open spaces and all exterior physical improvements in the Downcity District shall be regulated and approved in accordance with Section 502 of the Zoning Ordinance.
The text of the Providence Zoning Ordinance provides that the boundaries of the overlay zoning districts are established on the Providence Overlay Zoning District Maps, as the same are defined in Section 102 of the Providence Zoning Ordinance (the "Overlay District Maps"). The purported Overlay District Map for Plat 26 includes no legend or other designation for the "Downcity District." The purported Overlay District Maps, which encompass the downtown area of Providence, generally, include no legend or other designation for the "Downcity District." The purported Overlay District Maps, which encompass the downtown area of Providence, generally, do not include the words "Downcity District" anywhere on the maps. There is no legend on the Overlay District Maps, which encompass the downtown area of Providence, generally, that identifies the subject Lot as being within the Downcity District.
The provisions of the Providence Zoning Ordinance relating to a "Downcity District" were first added to the Providence Zoning Ordinance approved on June 29, 1994 and identified as Chapter 1994-24 (the "Ordinance"). The Overlay District Maps were not amended at such time to specifically reference the Downcity District on said maps. The Lot does not appear on the list of lots attached to the Ordinance, which list includes change of zoning and/or district designations to lots in the City.
Portions of the text of the Ordinance were amended in 1995. Section 101.7 was amended to provide that the purported Downcity District overlay zone's boundary
 "shall be the same as the D-1 District boundary as described in Section 101.3, generally encompassing the area bounded by Smith Street, North Main Street, South Water Street, Ship Street, Bassett Street, and Interstate 95. The D-1 zone north of Smith Street (bounded by Smith Street, Interstate 95, Orms Street, Charles Street and Mill Street) shall not be included in the DD Downcity District. [Ord. 1995-8]." Section 101.7 (1995).
The Lot is located within the boundaries as described generally above. Prior to the time of the enactment of the 1995 Ordinance, the City Council did not give written notice of the time, date and place and the nature and purpose of the proposed enactment to the then current owner of the Lot, Cumberland Farms, Inc.
The Overlay District Maps are located in the office of the City of Providence, Department of Planning Development located at 400 Westminster Street in Providence, Rhode Island Such office is approximately one-half (1/2) mile from the City Clerk's Office located within City Hall. The City Clerk does not have physical possession of the Overlay Zoning District Maps.
 Standard of Review
"Under the Uniform Declaratory Judgments Act, G.L. 1956 §§9-30-1 through 9-30-16, the Superior Court `shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.' Section 9-30-1." P.J.C.Realty v. Barry, 811 A.2d 1202, 1207 (R.I. 2002) (pursuant to §9-30-1, the trial justice has the "authority to construe the obligation of the city to conform its ordinances with the comprehensive plan as required by the Rhode Island Zoning Enabling Act"). General Laws § 9-30-2 provides, in part, that
 "[a]ny person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." Section 9-30-2.
Accordingly, when a land owner seeks a declaration that a zoning ordinance is "facially unconstitutional or in excess of statutory powers, or that the agency or board had no jurisdiction," the land owner may institute a declaratory judgment action. SeeKingsley v. Miller, 120 R.I. 372, 374, 388 A.2d 357, 359 (1978) (citing Taylor v. Marshall, 119 R.I. 171, 376 A.2d 712 (1977).
The decision to issue a declaratory judgment lies within the trial justice's discretion. Lombardi v. Goodyear Loan Co.,549 A.2d 1025, 1027 (R.I. 1988) ("decision to grant a remedy under the Declaratory Judgments Act is purely discretionary") (citingEmployers' Fire Ins. Co. v. Beals, 103 R.I. 623, 628,240 A.2d 397, 401 (1968)). Pursuant to the "liberalized provisions for joinder under Rules of Civil Procedure 18 and 20," a complaint seeking both injunctive relief and a demand for declaratory relief "is perfectly proper." Duffy v. Mollo,121 R.I. 480, 487, 400 A.2d 263, 267 (1979); see also Gomes v.Wall, 831 A.2d 817, 821 (R.I. 2003); Parente v. Southworth,448 A.2d 769, 772 (R.I. 1982).
 Zoning Districts and Ordinances
"[B]y its very nature zoning interferes with and restricts the right of a property owner to devote his property to uses that would be proper at common law." Goldstein v. Zoning Bd. ofReview, 101 R.I. 728, 730, 227 A.2d 195, 197 (1967) (citingCity of Providence v. Stephens, 47 R.I. 387, 133 A. 614
(1926)). However, "such interference and restrictions will be countenanced if the legislation or regulations out of which they arise constitute a valid exercise of the police power in that they tend to promote the public health, safety, morals and general welfare." Goldstein v. Zoning Bd. of Review,101 R.I. 728, 730, 227 A.2d 195, 197 (1967) (citing Heffernan v. ZoningBoard of Review, 50 R.I. 26, 144 A. 674 (1929)).
The Rhode Island Zoning Enabling Act provides that "[a] zoning ordinance divides a city or town into zoning use districts, which may include overlay districts and floating zone districts. . . ." G.L. 1956 § 45-24-36. A zoning ordinance must be comprised of,inter alia, a zoning map and supporting documentation. Section 45-24-32. General Law Section 45-24-36 of the Enabling Act mandates that zoning use districts "be depicted by type and location on the zoning map." See also Roland F. Chase, RhodeIsland Zoning Handbook, § 45 (1993). The "various districts referred to in the text of the ordinance must be definitely established in relation to the various lands in the municipality. . . ." 1 Ziegler, Rathkopf's The Law of Zoning andPlanning § 10:11 (2003) (citing In re Kensington-Davis Corp.,239 N.Y. 54, 145 N.E. 738 (1924) and Sampson v. Kames,415 S.E.2d 610 (W.Va. 1992) (court looked to the city's zoning map to settle the question raised by the language of the ordinance as to whether the subject property was zoned for sales of mobile homes); 2 Anderson, American Law of Zoning § 9.02 at 120 (4th ed. 1996) ("zoning ordinance which fails to prescribe the boundary lines of zoning districts, by maps, metes and bounds, or other suitable means, is invalid").
"A zoning map `must contain sufficient information to permit a person of ordinary intelligence to locate on the map any specific legally described tract of land, and to determine with reasonable accuracy and precision the boundaries of any zoning district.'"Coastal Property Assoc., Inc. v. St. George, 601 A.2d 89, 91 (Me. 1992) (quoting Deans v. West, 189 Neb. 518,203 N.W.2d 504, 507 (Neb. 1973)) (holding that zoning map controlled where the zoning ordinance made the zoning map the primary authority for locating boundaries); Tohickon Valley Transfer, Inc. v.Tinicum Township Zoning Hearing Bd., 97 Pa. Commw. 244, 260 (1986) ("zoning district boundaries . . . must appear upon the zoning map with definiteness in order that landowners can rely upon predictable content within the zoning ordinance and map for the purpose of deciding where they can develop structures and where they cannot do so."); see also 1 Ziegler, Rathkopf's TheLaw of Zoning and Planning § 10:14 (2003) ("where zoning district boundaries are fixed by ordinance as set forth on the appropriate zoning maps, zoning officials have no authority or discretion to apply a particular district's regulations to a tract of land not within the district as mapped").
The local legislature is empowered to amend its zoning ordinances. Section 45-24-50 ("for the purpose of promoting the public health, safety, morals, and general welfare, a city or town council has the power . . . to . . . amend a zoning ordinance"). The exercise of the power to amend a zoning ordinance, however, is "limited to that conferred in the enabling statute." Cianciarulo v. Tarro, 92 R.I. 352, 359, 168 A.2d 719, 723 (1961). Any zoning amendment "must be definite and certain and meet all requirements of the enacting process or it will not become legally effective." 2 E.C. Yokley, Zoning Law andPractice § 11-3 (4th ed. 2001 Revision by Douglas Scott MacGregor). The Zoning Enabling Act requires the local legislature to provide notice and a hearing prior to amending a zoning ordinance. Section 45-24-53. In pertinent part, § 45-24-53
requires that
 "(c) Where a proposed amendment to an existing ordinance includes a specific change in a zoning district map, but does not affect districts generally, public notice shall be given as required
by subsection (c) of this section, with the additional requirements that:
 (1) Notice shall include a map showing the existing and proposed boundaries, zoning district boundaries, and existing streets and roads and their names, and city and town boundaries where appropriate; and
 (2) Written notice of the date, time, and place of the public hearing and the nature and purpose of the hearing shall be sent to all owners of real property whose property is located in or within not less than two hundred feet (200') of the perimeter of the area proposed for change, whether within the city or town or within an adjacent city or town. The notice shall be sent by registered or certified mail to the last known address of the owners, as shown on the current real estate tax assessment records of the city or town in which the property is located." Section 45-24-53 (emphasis added).
Section 45-24-55 dictates that the city or town clerk is the custodian of the zoning ordinance and zoning maps, and it requires that "[c]hanges which impact the zoning map shall be depicted on the map within (90) days of the authorized change(s)."
 The Downcity District
In 1994, the City added provisions to its Ordinance providing for an overlay district called the Downcity District. The Ordinance requires that "the design of the exterior of all buildings, open spaces and all exterior physical improvements in the Downcity District shall be regulated and approved" by the Downcity Design Review Committee in accordance with Section 502 of the Ordinance. The text of the Ordinance indicates that the boundaries of the overlay districts are defined in Section 102 of the Ordinance. Section 101.7. Section 102, however, does not actually define the boundaries of the overlay districts. Rather, Section 103 of the Ordinance references the boundaries of the overlay districts. In pertinent part Section 103 states that "the overlay zoning districts . . . are hereby established as shown on a series of maps on file in the office of the City Clerk entitled `Providence Zoning District Maps. . . .'" Section 1111 of the Ordinance provides, in part, that the "zoning maps and overlay zoning maps shall control the zoning of any particular parcel of land" When the provisions of the Ordinance relating to a "Downcity District" were first added on June 29, 1994, the Overlay District Maps were not amended at such time to specifically reference the Downcity District on those maps.
In 1995, the City amended portions of the Ordinance. Section 101.7 was amended to include the following sentence in reference to the Downcity District:
 "This overlay zone's boundary shall be the same as the D-1 District boundary as described in section 101.3, generally encompassing the area bounded by Smith Street, North Main Street, South Water Street, Ship Street, Bassett Street, and Interstate 95. The D-1 zone north of Smith Street (bounded by Smith Street, Interstate 95, Orms Street, Charles Street and Mill Street) shall not be included in the DD Downcity District." Section 101.7 (1995).
Section 103, stating that the overlay zoning districts will be shown on a series of maps on file in the office of the City Clerk, and Section 1111, stating that the "zoning maps and overlay zoning maps shall control the zoning of any particular parcel of land" were not revised or amended in 1995.
In the instant action, the City asserts that the subject Lot is within the Downcity District. The City seeks to impose fines against the Plaintiffs based on their alleged failure to seek approval of the Downcity Design Review Committee prior to demolishing the Building which was housed on the Lot at issue. Plaintiffs contend that City's Overlay District Maps do not depict their Lot within the Downcity District, and they argue that their Lot is, therefore, not subject to the Downcity District regulations. Additionally, Plaintiffs argue that the Downcity District regulations are unenforceable because the City failed to depict the Downcity District on any overlay map and failed to provide written notice of the 1995 enactment to the Lot owner as required by §§ 45-24-36 and 45-24-53. Plaintiffs further argue that the Downcity District regulations are unenforceable because the Overlay Maps are not housed at the City Clerk's office as required by § 45-24-55 and the Ordinance.
In asserting its right to enforce the Downcity District regulations against the Plaintiffs, the City maintains that the Downcity District is properly identified. According to the City, the text of Section 101.7 as amended in 1995, and the Official Zoning Map identify the Downcity District when read together. The City explains that the Official Zoning Map depicts the D-1 district, and the text of Section 101.7 of 1995 Ordinance states that the Downcity District is the same as the D-1 District (except for one portion of the D-1 district which is located far from the subject Lot). Thus, the City reasons that the Downcity District is adequately identified in spite of the fact that it is not specifically labeled on any Overlay District Map. The City concedes that the Downcity District is not depicted on any Overlay map.
The resolution of this action depends on statutory interpretation. Citing to Hanley v. State, 837 A.2d 707, 709 (2003), the City essentially asks this Court to treat the Ordinance as an ambiguous statute and give effect to the purpose of the Ordinance as intended by the City Council. The City urges the Court to look to the intention of City Council and validate the Ordinance because the City intended to create a Downcity District. Plaintiffs argue that the Enabling Act is unambiguous and that the Ordinance is void because the City failed to comply with the Act.
The task before this Court is to interpret the mandates of the Enabling Act and to determine whether the provisions of the Ordinance relating to the Downcity District may be upheld in light of those requirements. The Court must "resolve all doubts and ambiguities contained in the zoning laws in favor of the landowner because these regulations are in derogation of the property owner's common-law right to use her property as she wishes." Denomme v. Mowry, 557 A.2d 1229, 1231 (R.I. 1989) (citing City of Providence v. O'Neill, 445 A.2d 290, 293 (R.I. 1982). "[I]t is well settled that when the language of a statute is clear and unambiguous, [the] Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." Solas v. Emergency Hiring Council,774 A.2d 820, 824 (R.I. 2001); Kastal v. Hickory House, 95 R.I. 366, 369, 187 A.2d 262, 264 (1963) ("[o]nly when the legislature sounds an uncertain trumpet may the court move in to clarify the call. But when the call is clear and certain . . . [the court] may not consider whether the statute as written comports with our ideas of justice, expediency or sound public policy."). When examining an unambiguous statute, the Court may not employ the principles of statutory construction; rather, the Court must enforce the statute as written. See Arnold v. Rhode IslandDepartment of Labor and Training, 822 A.2d 164, 169 (2003).
Based on the facts stipulated by the parties, it is undisputed that the City failed to depict the Downcity District on the Overlay District Maps as required by the Enabling Act and the Ordinance. Specifically, the parties have stipulated that: (1) the purported Overlay District Map for Plat 26 includes no legend or other designation for the "Downcity District;" (2) the purported Overlay District Maps, which encompass the downtown area of Providence, include no legend or other designation for the "Downcity District;" and do not include the words "Downcity District" anywhere on the maps; (3) there is no legend on the Overlay District Maps, which encompass the downtown area of Providence that identifies the subject Lot as being within the Downcity District; and (4) the Lot does not appear on the list of lots attached to the 1994 Ordinance, which list includes change of zoning and/or district designations to lots in the City.
In the instant matter, the plain language of the Enabling Act mandates that zoning use districts be depicted on a zoning map. Section 45-24-36. ("[z]oning use districts shall be depicted by type and location on the zoning map") (emphasis added). Further, the Ordinance states that the overlay zones are shown on Overlay District Maps, and the Ordinance dictates that the zoning and Overlay Maps control the zoning of any particular lot. The parties, however, agree that the Overlay District Maps neither depict the Downcity District nor show that the Lot at issue is within the Downcity District. In fact, officials for the City admitted, in deposition, that review of the maps for the subject Lot would not be sufficient to determine whether the Lot is located in the Downcity District. See Deposition Transcript of Samuel Shamoon at 27 ("if you looked at the map [for plat 26] just by itself and didn't look at anything else, you would — there is a lot of things you would not be able to determine. It's not a complete picture."); see also Deposition Transcript of Planning Department Employee, Christopher Ise at 11-12 (Ise testified that one could not determine which lots are within the Downcity District by looking only at the Overlay Map.).
Given the principles of statutory construction, the plain language of § 45-24-36, and the undisputed fact that the Overlay District Maps do not depict the Lot as being within the Downcity District, this Court finds that the subject Lot is not within the Downcity District. Moreover, the provisions of the Ordinance purporting to create a Downcity Overlay District are invalid as the Downcity District is not properly depicted on the City's maps. Although the text of the 1995 Ordinance at Section 101.7 attempts to define the boundaries of the Downcity District, the general description contained therein cannot cure the City's failure to depict the Downcity Overlay District on the Overlay Maps in the accordance with the requirements of § 45-24-36. See
2 E.C. Yokley, Zoning Law and Practice § 9-5 (4th ed. 2001 Revision by Douglas Scott MacGregor) ("a land use map delineating the boundaries of the various use districts in the ordinance is an indispensable adjunct of the ordinance since the public is entitled to accessible visual knowledge of the land use allocations contained in zoning ordinances") (emphasis added).
Having found that the provisions of the Ordinance pertaining to the Downcity District are invalid for failure to comply with §45-24-36, the Court notes that the failure to depict the overlay districts is not the only deficiency invalidating the Ordinance. General Law § 45-24-53 requires that "where a proposed amendment to an existing ordinance includes a specific change in a zoning district map, but does not affect districts generally," written notice to specified land owners is required. Plaintiffs assert that the Ordinance is void because the City failed to follow the notification procedure required for a specific change in a zoning district map when the Ordinance was amended in 1995. See §45-24-53. The City acknowledges that written notice was not provided to the land owner. The City argues, however, that the amendment was a general one, and the City asserts that written notice was not required.
Since Section 101.7 of the 1995 Ordinance purported to define the boundaries of a specific overlay district, and the map attached to the 1995 Ordinance is titled "Extension of Downcity Overlay District," this Court finds that the amendment fell within the ambit of a "proposed amendment which includes a specific change in a zoning district map." Section 45-24-53(c). Accordingly, written notice to the landowners within two hundred feet of the perimeter of the area proposed for change was required. Section 45-24-53(c)(2). As the City concedes that such notice was not perfected, the Court must find the Ordinance invalid for failure to follow the notice requirements mandated by the Enabling Act.[1] Id; see also Quigley v. Town ofGloucester, 520 A.2d 975 (1987) (Court affirmed trial justice's finding that the City Council lacked jurisdiction to revise the Town's ordinance where proper notice was not provided to surrounding land owners).
Citing to § 45-24-55, Plaintiffs next argue that the Downcity District regulations may not be invoked against the landowner because the maps were not on file in the City Clerk's Office. General Law Section 45-24-55 dictates that the city or town clerk is the custodian of the zoning ordinance and zoning maps. The City appears to argue that it satisfied the "maintenance" requirement of § 45-24-55 of the Enabling Act by delegating maintenance of the maps to the Planning Department, which is located in a separate building on Westminster Street. Given that the Enabling Act requires the City Clerk to the be the custodian of the zoning maps and the Ordinance declines to specify that such responsibility has been delegated to the Planning Board, the Court finds that the City's Ordinance fails to comply with the Enabling Act by maintaining the maps in the Clerk's Office or by notifying the public of the alternate location of the zoning maps. See § 45-24-55.
 CONCLUSION
After carefully reviewing the record evidence and the facts stipulated by the parties, this Court finds and declares that the provisions of the Ordinance pertaining to the Downcity District are null and void based on the City's (1) failure to depict the Downcity District on the relevant maps, (2) failure to comply with proper notice requirements prior to amending the Ordinance, and (3) failure to maintain the maps in the location dictated by the Enabling Act and the Ordinance. In light of this declaration, the Plaintiffs' Lot is not located within the Downcity District, and the Downcity District regulations may not be enforced against the Plaintiffs. As a result of prevailing on the merits of their declaratory judgment action, Plaintiffs have also satisfied their burden pursuant to Superior Court Rules of Civil Procedure Rule 65, and are entitled to injunctive relief. See Fund forCommunity Progress v. United Way, 695 A.2d 517, 521-522 (1997) (party seeking injunctive relief must demonstrate irreparable harm, reasonable likelihood of success on the merits and that the equities of the case weigh in favor of granting the requested relief). Accordingly, the City is permanently enjoined from imposing any penalties or fines against the Plaintiffs relative to the NOVs issued in April of 2003. Counsel shall submit the appropriate judgment for entry.
[1] Although the Plaintiffs were apparently not the land owners in 1995, Plaintiffs have standing, pursuant to § 9-30-2, to seek a declaration of the Ordinance's validity because the City is attempting to enforce the Downcity District regulations against the Plaintiffs. See § 9-30-2 ("any person . . . whose rights . . . are affected by a . . . municipal ordinance . . . may have determined any question of construction or validity arising under the . . . ordinance . . .").