## No. 11,405.

HAYMAKER, ET AL. *v.* WINDSOR RESERVOIR AND CANAL CO.,
ET AL.

Decided March 7, 1927. Rehearing denied April 4, 1927.

Action to quiet title.   Judgment for defendants.

## *Reversed.*

1.  PLEADING—*Quieting Title—Possession.*   In an action to quiet title,
    the objection that the complaint fails to allege possession is waived
    where defendant sets up an affirmative defense and alleges title
    and possession in himself.

2.  WORDS AND PHRASES—*"Exception"—"Reservation."*   Many courts,
    including those of Colorado, have used the words "exception" and
    "reservation" interchangeably.

3.  DEED—*Heirs.*   The use of the word "heirs" in a deed is not neces-
    sary to create a fee.

4.  *Exception—Reservation—Construction.*   A clause in a deed to
    land "Reserving, however, to the grantor above named the right to
    occupy the above described property for any use not inconsistent
    with its use by grantee for reservoir purposes," held to be an ex-
    ception, rather than a reservation.

5.  QUIETING TITLE—*Evidence.*   In an action to quiet title, evidence
    reviewed, and certain conveyances, together with receipts for pay-
    ment of taxes, held, under the facts disclosed, not to sustain or
    establish the defense that defendant was the owner in fee; nor
    that it and it's predecessors in title had been in possession—under
    claim and color of title made in good faith for twenty years; nor
    that its possession and payment of taxes continued for more than
    seven years.

6.  *Possession.*   In an action to quiet title, the possession required
    to support a defense must be actual, adverse, hostile to the owner
    under a claim of right, and it must be open, exclusive, notorious and
    continuous.

7.  EVIDENCE—*Quieting Title—Tax Receipts.*   In an action to quiet title,
    tax receipts held not evidence of payment of taxes on the land in
    controversy where they did not identify the land definitely.

*Error to the District Court of Larimer County, Hon. Francis E. Bouck, Judge.*

Messrs. BARDWELL, MCCOMB & STRONG, for plaintiffs in error.

Mr. C. D. TODD, Mr. ROBERT D. HAWLEY, Mr. W. M. AULT, for defendants in error.

*Department One.*

MR. JUSTICE SHEAFOR delivered the opinion of the court.

PLAINTIFFS in error were plaintiffs in the court below, and defendants in error were defendants there. The suit is one in the nature of an action to quiet title to 42½ acres in the N. W. ¼ sec. 19, tp. 8 N., range 68 W., based upon plaintiffs' claim of right to occupy and use the same, claiming "the right, among other things, to mine and drill said lands and property for oil, gas and other minerals, and to produce and possess the products thereof as their own property * * * to be exercised by the plaintiffs, their heirs, executors, administrators and assigns, to any extent not inconsistent with the use of said premises by the defendant, the Windsor Reservoir & Canal Company, for reservoir purposes for the impounding of water for irrigation purposes." The complaint contained no direct allegation that plaintiffs were in possession.

To plaintiffs' complaint defendants demurred, which was overruled. Defendants did not stand by their demurrer, but answered over, their defenses being, in addition to a general denial, that about January 24, 1923, the Windsor Reservoir & Canal Company was the owner in fee of the land and was in exclusive possession; that the Windsor company and its predecessors in title had been in the actual, open, notorious, exclusive and continuous possession of the premises for more than twenty

years prior to the commencement of the action adverse
to the plaintiffs and all other persons; that the Windsor
company and its predecessors in title had been in actual
and continuous possession of the lands under claim and
color of title made in good faith, for more than twenty
successive years prior to the commencement of the ac-
tion and during all of said period had paid all taxes
legally assessed thereon, and on the full and undivided
fee simple title therein, and that said period of possession
and payment of taxes continued for the period of more
than seven successive years.

Defendants prayed that defendants' respective rights
in and to said lands and the undivided fee simple title
therein, including all oil and gas therein and thereunder,
be quieted and confirmed to their respective rights and
interests, and for all proper relief.

In their reply the plaintiffs set forth a deed executed
by the plaintiff Haymaker to the North Poudre Irriga-
tion Co., a corporation, dated January 10, 1903, which
was duly recorded. This deed, conveying the 42½ acres
referred to and described the same by metes and bounds,
was in form a warranty deed containing this reservation:
''Reserving, however, to the grantor above named the
right to occupy the said described property for any use
not inconsistent with its use by grantee for reservoir
purposes, grantee not to be held in any way liable to
grantor for injury that may be sustained to stock turned
upon said land by grantor.'' The main controversy in
this case is centered upon the construction to be placed
on the quoted clause in the deed.

On February 14, 1902, Haymaker executed and de-
livered to Gilfillen and Shallenberger an oil and gas lease
on the N. W. ¼ of section 19, which included the lands
herein involved, for twenty years, to prospect, mine and
drill for coal, oil and gas, which lease was duly recorded.

On July 23, 1903, the North Poudre Irrigation Co.,
executed and delivered to Benjamin H. Eaton a war-

ranty deed conveying the premises theretofore conveyed to it by Haymaker.

On November 26, 1923, Haymaker executed and delivered a quit-claim deed to the other plaintiffs in this case of an undivided four-fifths interest in the premises in controversy. These several conveyances were duly recorded.

The plaintiffs claim that the reservation in the deed is either an exception or a re-grant; that it was of very full and unlimited possession and use not inconsistent with the one granted for reservoir purposes; that it extended not only to the grantor, but to his heirs and assigns as well; that the intent was to except to the grantor and to his heirs and assigns every dominion, except for reservoir purposes, and full possession and full use save for the excepted purposes; that whether the clause be construed as a reservation or an exception is immaterial; that the thing being in existence and the reservation being in the granting clause, it was a technical exception; that if it is a technical reservation it is the creation of a new estate by re-grant, and that a reservation will be construed as an exception where that is the intent.

Defendants' contentions, relative to the deed, are that the grantor, Haymaker, intended only to reserve to himself personally the right to pasture his stock upon those portions of the land conveyed not flooded with water by the grantee, and the privilege of watering his stock at the reservoir; that the deed is a grant to the North Poudre Irrigation Co., in fee simple, of the land described, with a mere reservation to the grantor of the privileges mentioned. They contend that the contract is plain, clear and unambiguous, and must speak for itself; that parol evidence is not necessary to explain it; that the conduct of the parties and other extraneous evidence, which they claim are relied upon by the plaintiffs, are wholly immaterial and inadmissible, and that it is clearly the creation of a new right or privilege, in connection

with the premises granted, and is a reservation in fact and not an exception; also that the reservation in the deed is to the grantor only, and not to the grantor, his heirs and assigns.

1. Defendants insist that the complaint does not state a cause of action because it does not allege that plaintiffs were in possession at the commencement of this action, and that the demurrer should have been sustained. We do not think so. Whether the complaint sufficiently al-· leges plaintiffs' possession is immaterial. The defendants waived it and gave the court, by their answer, jurisdiction to determine the controversy. The answer was, in effect, an affirmative defense in the nature of a counterclaim in which they alleged title and possession in themselves, and asked the court to quiet their title. *Gutheil Co. v. Montclair,* 32 Colo. 420, 425, 76 Pac. 1050; *Relender v. Riggs,* 20 Colo. App. 423, 429, 79 Pac. 328; *Mulford v. Rowland,* 45 Colo. 172, 175, 100 Pac. 603; *Square Deal Co. v. Colomo Co.,* 61 Colo. 93, 96, 156 Pac. 147.

The authorities cited by defendants merely support the general rule that there must be allegation and proof of possession. In *Lambert v. Murray,* 52 Colo. 156, 120 Pac. 415, cited by defendants and relied upon by them, it does not appear that affirmative relief was asked. The court held in that case that the allegations in the answer of ownership and possession in the defendant were in effect a denial of ownership and possession in the plaintiffs, and further held that the defendant did not set forth an affirmative defense in the nature of a cross complaint.

2. It is conceded that many courts, this court included, have used the words "exception" and "reservation" interchangeably.

We think that whether the reservation clause in this deed is to be construed as an exception or as a reservation, the word "heirs" is unnecessary to create a fee. Sec. 4876, C. L. 1921; *Hagerty v. Lee,* 54 N. J. L. 580, 25 Atl. 319, 20 L. R. A. 631; *Preston v. Wells,* 187 Ky. 417,

219 S. W. 173; *Beeman v. Stilwell,* 194 Ia. 231, 189 N. W. 969; *Smith v. Furbish,* 68 N. H. 123, 44 Atl. 398, 47 L. R. A. 226.

We think the reservation clause in this deed should be construed as an exception rather than as a reservation. In 18 R. C. L. 1176, § 84, it is said that, "A reservation will be construed as an exception where that is the plain intent and the grantor will retain in himself a fee simple estate in the portion reserved. And so the fact that subsequent to the severance of the minerals from the surface estate a conveyance of the land is made in which no reservations or exceptions of the minerals are set forth does not extinguish the rights of the mineral owner nor vest any of the mineral rights in the grantee of such a conveyance."

In 18 C. J. 340, it is said, "A reservation is a clause in a deed whereby the grantor reserves some new thing to himself out of that which he granted before. It differs from an exception which is ever (a) of part of the thing granted and of a thing in esse at the time. The office of an exception is to take something out of the thing granted that would otherwise pass. While this distinction between a reservation and an exception has been universally recognized, the terms 'reservation' and 'exception' are often used interchangeably and the technical meaning will give way to the manifest intent, even though the technical term to the contrary is used."

When we consider the situation and the wants and needs of Haymaker at the time he executed his deed to the North Poudre Irrigation Co., and the wants and needs of the irrigation company, it is difficult to believe that the parties did not intend the reservation in the deed to be an exception. Haymaker had this land fenced with other lands for pasture. He used this reservoir site and needed it for watering his stock when there was no water in the Larimer county ditch. He had given the oil and gas lease upon it. The irrigation company wanted the site only for a reservoir for irrigating purposes and

for the storing and impounding of water. Haymaker received only $300 for the conveyance. Consulting the deed from the North Poudre company to Eaton of this same land, we find it therein stated that it was the intention of the grantor "to convey all of its interest in the land comprising the site of what is known as Reservoir or Reservoir Basin No. 8 and its annex." The deed contained this further clause, "The said real property hereby conveyed to the party of the second part shall be used as an irrigation reservoir and for the storage from time to time of water." This at least has some bearing upon what the parties understood at the time the deed was made by Haymaker to the irrigation company. The language of the reservation, as we have seen, is that the grantor, Haymaker, reserved the right to occupy the premises for any use not inconsistent with its use by grantee for reservoir purposes.

We think that without any extrinsic evidence the language of the deed itself clearly shows that an exception was intended rather than a strict reservation.

3. To sustain their defenses, the defendants introduced a number of conveyances, Exhibits 1 to 12 inclusive, a map of the lands in question, and Exhibit 14, being a bundle of tax receipts beginnnig with the year 1906, to and including the year 1917, except the years of 1913 and 1916, together with the assessor's certificate that the company paid taxes those years; they also called Mr. Todd as a witness.

We think this evidence does not sustain or establish the defense that the Windsor Company was the owner in fee of the premises in controversy, and in the exclusive possession thereof, nor that the Windsor Company and its predecessors in title had been in actual, open, notorious, exclusive and continuous possession of the premises for more than twenty years prior to the commencement of the action adverse to the plaintiffs. Neither do we think that their evidence sustains and establishes

their defense that the Windsor Company, and its prede-
cessors in title, had been in actual and continuous pos-
session of the lands in controversy under claim and
color of title made in good faith for more than twenty
successive years prior to the commencement of the action,
and that during all of said period they had paid all
taxes thereon, nor that said period of possession and
payment of taxes continued for a period of more than
seven successive years. The evidence clearly shows, we
think, that they could not have been in exclusive posses-
sion of the premises for the period of twenty years. Mr.
Todd's evidence was to the effect that the Windsor Com-
pany had been in possession of the lands since 1911,
"Having all the possession anybody had"; that the
Divide Company, predecessor of the Windsor Company,
"held possession since about the time they acquired
it in 1904." When asked the question if he knew posi-
tively of his own knowledge that the Windsor Company
had the actual possession of the premises since the time
they acquired it from the Divide Company, Mr. Todd
answered, "They have used the property in the way that
use would indicate and used it to the full extent thereof
right along all these years. Part of that I know from
seeing it and part of it I know from being attorney and
handling their business and papers and being friends
with the people who own it and in communication with
them."

Mr. Todd further testified that "The purpose of the
company (Windsor Company) in acquiring the land was
to buy the land for a reservoir, and they have stored
water on the land" and that that was all it could use the
land for.

It is quite evident that this testimony utterly fails to
show the twenty-year possession required by the author-
ities. ·

4. As to the possession and payment of taxes for
seven years: The evidence shows that the assessments

were upon reservoir land and not upon minerals, oil or gas; the evidence does not show that defendants or their predecessors had paid all taxes, on the land involved, any particular year or for seven successive years; no particular land or interest in any particular land is identified upon which taxes were assessed or paid, nor does the evidence show continuous possession of the land under claim and color of title made in good faith, as required by statute.

The possession must be actual; it must be adverse; it must be hostile to the owner and under a claim of right, and it must be open, notorious, exclusive and continuous. *Webber v. Wannemaker,* 39 Colo. 425, 433, 89 Pac. 780.

It would unnecessarily prolong this opinion to set forth the evidence disclosed by the tax receipts. It is sufficient to say that none of them identify definitely the particular land in question.

For the reasons given the case is reversed with instructions to the trial court to proceed in accordance with the views expressed herein.

Mr. Chief Justice Burke, Mr. Justice Denison and Mr. Justice Whitford concur.

### On Rehearing.

Mr. Justice Sheafor.

It was not our intention to reverse the case as to that portion of the premises in controversy situated in the south half of the northwest quarter, but only as to that portion situated in the north half of the northwest quarter, and the opinion should have specifically so stated.

It is suggested in the petition for rehearing that in stating that the answer was, in effect, an affirmative defense in the nature of a counterclaim, we misapprehended the scope and effect of the decision in *Lambert v. Murray,* 52 Colo. 156, 120 Pac. 415. We do not think we misapprehended the effect of that case, but in the

opinion we cited *Square Deal Co. v. Colomo Co.*, 61 Colo. 93, 96, 156 Pac. 147, which sustains our position.

The decision in the latter case, in effect, overrules *Lambert v. Murray, supra.*

Opinion modified as herein indicated, and rehearing denied.