DUANE J. DOWD AND FRANCES DEE DOWD, APPELLANTS, V. CITY OF OMAHA, DOUGLAS COUNTY, NEBRASKA, APPELLEE.

520 N.W.2d 549

Filed July 26, 1994.    No. A-92-542.

J. Patrick Green for appellants.

Herbert M. Fitle, Omaha City Attorney, Michael A. Goldberg, and Alan M. Thelen for appellee.

IRWIN, MILLER-LERMAN, and MUES, Judges.

MILLER-LERMAN, Judge.

In this condemnation case, Duane J. Dowd and Frances Dee Dowd, appellants and condemnees, appeal from certain trial rulings and the judgment entered by the district court after trial by jury. For the reasons recited below, we reverse, and remand for further proceedings.

## FACTS

This case involves the partial taking of Lots 7, 8, 9, and 22 in three tracts to the east of the Little Papillion Creek, in a

northwest subdivision of the City of Omaha (City) known as Richland Acres. The condemnation action was commenced by the City to acquire the property for park and recreational use in conjunction with construction of the Keystone Trail.

The owners of the property at issue were Duane J. Dowd and Frances Dee Dowd, husband and wife. There were no improvements on the property, and the property had a transitional zoning status classified as "Development Reserve." Lots 7, 8, 9, and 22 run in a north-south direction in relation to each other and are partially bordered by North 88th Street to the east. Little Papillion Creek runs generally north-south through Lots 7, 8, 9, and 22. Land comprising Lots 7, 8, 9, and 22 is found on both sides of the creek. The condemned portions were to the east of the creek. The noncondemned portions of Lots 7, 8, 9, and 22, to the west of the creek, proceed to an abandoned railroad right-of-way. Condemnees were also owners of Lot 23, the land to the west of the right-of-way. Lot 23 is bordered by North 90th Street at the westernmost point. North 90th Street is a four-lane arterial street on which considerable commercial development has occurred. The following is a general illustration of the area:

The petition for condemnation was filed in the county court by the City on April 12, 1988. The county board of appraisers valued the condemned portions of Tract 1, containing 88,719 square feet, at a total of $7,100; Tract 2, containing 167,730 square feet, at a total of $13,400; and Tract 3, containing 160,574 square feet, at a total of $94,500. Of these total amounts, condemnees were allowed $6,931.84 on Tract 1, $12,842.06 on Tract 2, and $76,859.39 on Tract 3. Condemnees appealed to the district court on all three tracts, setting out each tract as a separate cause of action. The City filed an appeal with regard to Tract 3.

A jury trial was conducted over 10 days. The bill of exceptions consists of 11 volumes comprising 2,468 pages of testimony accompanied by over 125 exhibits. Following deliberations, the district court jury returned a verdict valuing Tracts 1 and 2 together at $35,905 and Tract 3 at $28,915. The district court awarded the costs to the City on all three causes of action and denied condemnees' request for fees, costs, and expert witness expenses. Since condemnees had withdrawn funds under the award in county court, the district court entered a net judgment for the City in the amount of $79,724.05. Condemnees timely appealed to this court.

Condemnees allege eight assignments of error, which we condense to four. Condemnees claim that the trial court erred (1) in finding that condemnees were not the owners of the abandoned railroad right-of-way and in failing to treat the center of the right-of-way as the western boundary between the condemned tracts and the lot owned by condemnees west of the condemned tracts for purposes of computing severance damages and value of the land taken; (2) in admitting the purchase prices paid by condemnees for Tracts 1 and 3 in 1979 and 1981 respectively and in admitting the blighted purchase price paid by condemnees for Tract 2 in 1985; (3) in allowing the city's expert, Thomas E. Stevens, to testify and ultimately formulate an opinion based on hearsay declarations that were inherently vague and speculative; and (4) in failing to award condemnees attorney fees, expert witness fees, and costs as to Tracts 1 and 2, on which the jury verdict exceeded the county court award.

Because we find reversible error in connection with the first assignment of error, and the remaining assignments of error pertain to the unique context of the conduct of the trial, we limit our opinion to consideration of the first assignment of error.

## STANDARD OF REVIEW

Regarding a question of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *County of Dakota v. Worldwide Truck Parts & Metals*, 245 Neb. 196, 511 N.W.2d 769 (1994).

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. Neb. Rev. Stat. § 27-103(1) (Reissue 1989). As a general rule, to constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about evidence admitted or excluded.

*McDonald v. Miller*, 246 Neb. 144, 149, 518 N.W.2d 80, 84 (1994).

## ANALYSIS

The ownership of the abandoned railroad right-of-way which connects Lot 23 on the west with the western portions of Lots 7, 8, 9, and 22 on the east was an issue in this case. The resolution of the ownership of the abandoned railroad right-of-way is significant for valuation purposes because generally, when part of a tract is taken in condemnation, the land taken must be valued in relation to the tract of which it is a part. *Frank v. State*, 176 Neb. 759, 127 N.W.2d 300 (1964), *modified* 177 Neb. 488, 129 N.W.2d 522. The owner is entitled to compensation not only for the part taken, but also for any depreciation in the value of the remainder caused by the taking, less special benefits. *Sorensen v. Lower Niobrara Nat. Resources Dist.*, 221 Neb. 180, 376 N.W.2d 539 (1985).

Condemnees contend that they were the owners of the abandoned railroad right-of-way, and as a result, Lots 7, 8, 9, 22, and 23 were contiguous for purposes of assessing compensation. The City argued that condemnees were not the owners of the abandoned railroad right-of-way, and therefore,

evidence of the value of the land underlying the abandoned railroad right-of-way was not admissible and Lot 23 was not to be considered contiguous with Lots 7, 8, 9, and 22 for valuation purposes.

Prior to trial, the City filed a motion in limine seeking to limit the admission of evidence regarding severance damages on the theory that condemnees did not own the railroad right-of-way and, therefore, Lots 7, 8, 9, and 22 did not extend under the abandoned railroad right-of-way and were not contiguous to Lot 23 for valuation purposes. The City relied on the argument that the documents subdividing the larger original area into individual tracts and conveying the individual lots which condemnees owned platted and described the right-of-way as a border or boundary rather than incorporating the right-of-way as part of the individual subdivided transferred lots. The trial court agreed with the City that condemnees did not own the right-of-way and sustained the motion in limine. The trial court concluded that the deed to the original railroad created a fee simple determinable with the possibility of reverter and that the possibility of reverter in the original grantor had not been conveyed to the condemnees.

The record shows that the railroad right-of-way was abandoned in 1981 by the Chicago and North Western Transportation Company, which was the successor in title of the original railroad grantee, the Fremont, Elkhorn and Missouri Valley Railroad Company. After the abandonment, the Chicago and North Western Transportation Company conveyed whatever title it had to the right-of-way to Duane Dowd in 1985.

On appeal, the City states that the right acquired by the railroads was an easement. Condemnees agree that the railroads' right-of-way was an easement and claim, therefore, that condemnees, as the owners of the land on both sides of the easement, also owned the fee simple title in the servient estate underlying the easement. Condemnees claim that the severance damages owed to them should encompass the railroad right-of-way and, in addition, that the land they owned to the west of the right-of-way adjoining North 90th Street should be considered contiguous for valuation purposes. Condemnees

argue that this total tract of land should have been taken into consideration in computing severance damages. Thus, condemnees claim that because the condemned land was part of a much larger assemblage fronting on a major street, it had greater value than that determined by the jury. Condemnees assert it was prejudicial error for the trial court to exclude valuation evidence which incorporated values of the condemned lots as including the servient estate underlying the easement containing the abandoned railroad right-of-way and of Lot 23, the contiguous lot which proceeded west to North 90th Street. We agree with condemnees.

*Conveyance Created an Easement.*

■ Abandoned railroad rights-of-way have been analyzed numerous times by the Nebraska Supreme Court, most recently in *State v. Union Pacific RR. Co.*, 241 Neb. 675, 490 N.W.2d 461 (1992), *modified* 242 Neb. 97, 490 N.W.2d 461. Relying on *Simacek v. York County Rural P.P. District*, 220 Neb. 484, 370 N.W.2d 709 (1985), the Nebraska Supreme Court reaffirmed in *Union Pacific RR. Co.* that an easement, as distinguished from a fee simple determinable or defeasible fee interest, is created when the deed indicates that the conveyance in question is for the "limited purpose of constructing and operating a railroad." 241 Neb. at 682, 490 N.W.2d at 466.

In the instant case, the language contained in the original deed from John A. and Sarah E. Creighton to the Fremont, Elkhorn and Missouri Valley Railroad Company in 1887 was virtually identical to the language cited in *Union Pacific RR. Co.* which was found to create an easement. Contrary to the trial court's finding that the railroads owned a fee simple determinable with the possibility of reverter, we conclude that an easement was created by the conveyance contained in the Creightons' deed.

*Condemnees Acquired Ownership of the Servient Estate Underlying the Abandoned Railroad Right-of-Way.*

The record shows that the chain of title from the Creightons regarding the lands in question eventually found its way to Edward T. Heyden on April 19, 1912. Neither party disputes the fact that each transfer in the chain of conveyances from the

Creightons to Heyden included a metes and bounds description of the railroad right-of-way and that the lands were transferred subject to the railroad right-of-way. The parties agree that the conveyances up to and including Heyden's acquisition fall squarely within the rule enunciated in *Lillich v. Lowery*, 211 Neb. 757, 320 N.W.2d 463 (1982), to the effect that such conveyances create an easement.

In *Lillich*, the Nebraska Supreme Court quoted a Missouri opinion with approval where it stated that

"a grant of land with full covenants of warranty, which definitely describes the land conveyed, and then excepts or reserves a roadway for the use of the public, or a railroad or other right of way, as such, occupying a mere easement on, over, or across the land conveyed, conveys the fee to the entire tract subject to the easement reserved."

211 Neb. at 762, 320 N.W.2d at 466 (quoting *Cravens v. Jolly*, 623 S.W.2d 569 (Mo. App. 1981)). Accordingly, a transfer of the land transfers it subject to an easement, and the grantor does not retain the servient estate underlying the railroad right-of-way unless the grantor explicitly identifies a retention. Pursuant to *Lillich*, it is generally illogical to presume that the grantor of a tract which includes a railroad right-of-way intends to retain the servient estate underlying the right-of-way while parting with the remainder of the tract. The Nebraska Supreme Court in *Lillich* also quoted with approval *Brown v. Weare*, 348 Mo. 135, 152 S.W.2d 649 (1941), in which it was said, " 'We cannot conceive that it was the intention of the grantor to retain the title to the servient estate in the strip over which the right of way ran while disposing of the abutting land.' " 211 Neb. at 762-63, 320 N.W.2d at 466. Retention of remote or isolated portions of land has long been criticized as against public policy. See *Paine v. Consumers Forwarding & Storage Co.*, 71 F. 626 (6th Cir. 1895).

The ruling in *Lillich* can be traced through a series of cases beginning with the dissent in *Kozak v. State*, 189 Neb. 525, 203 N.W.2d 516 (1973), *overruled by Lillich, supra*, which quoted the following language from the opinion in *Paine*:

"The evils resulting from the retention in remote dedicators of the fee in gores and strips, which for many

years are valueless because of the public easement in them, and which then become valuable by reason of an abandonment of the public use, have led courts to strained constructions to include the fee of such gores and strips in deeds of the abutting lots. And modern decisions are even more radical in this regard than the older cases."

189 Neb. at 531, 203 N.W.2d at 520 (White, C.J., dissenting).

The record shows that Heyden was the fee simple owner of the servient land underlying the railroad's easement at the time he acquired and thereafter subdivided the larger tract into the condemned and other lots. When Heyden subdivided the tract into lots, none of the metes and bounds descriptions of the residential lots included any portion of the railroad right-of-way in question. The lots were described as abutting the railroad right-of-way, but not including it. Heyden did not explicitly retain the railroad right-of-way upon subdividing the larger tract.

The City contends that because Heyden did not specifically include the railroad right-of-way in his metes and bounds description, as had his predecessors in interest, he did not intend to convey his rights to the servient estate underlying the easement. Thus, the City argues, condemnees did not acquire the land underlying the railroad right-of-way, and Lots 7, 8, 9, and 22 do not include land underlying the abandoned railroad right-of-way, nor are Lots 7, 8, 9, and 22 contiguous to Lot 23. In support of its argument, the City relies on *Bode v. Flobert Industries, Inc.*, 197 Neb. 488, 249 N.W.2d 750 (1977), which was overruled by *Lillich, supra,* to the extent that the court held that where an easement is excluded from a conveyance, the grantor retains the fee underlying the easement. We note that any implication that silence regarding a right-of-way amounts to a retention of the right-of-way upon transfer found in *Bode* was overruled in *Lillich, supra,* and we therefore conclude that the railroad right-of-way easement and servient estate underlying the railroad right-of-way were transferred when Heyden subdivided the larger tract. Thus, the lots acquired by condemnees which abut the railroad right-of-way include the servient estate underlying the abandoned railroad right-of-way.

*Parcels Abutting the Abandoned Railroad Right-of-Way Extend to the Center of the Abandoned Railroad Right-of-Way.*

Following our review of the case law, we believe that the pronouncements in *Carter v. State*, 198 Neb. 519, 254 N.W.2d 390 (1977), are applicable in the instant case. In *Carter*, the Nebraska Supreme Court stated:

> " '[W]hen the owner of land abutting upon a street or highway or upon a body of water or watercourse conveys the land, *the conveyance will carry title to and fix the boundaries of the grantor's land by the center* of the street or highway or the thread of the body of water or watercourse if the grantor's title extends thereto, *notwithstanding the land is described as being bounded by the road, highway, or watercourse.'...*"

(Emphasis supplied.) *Id.* at 523, 254 N.W.2d at 392. In *Seefus v. Briley*, 185 Neb. 202, 174 N.W.2d 339 (1970), the Nebraska Supreme Court held that in connection with conveyances of lots described as bounded by an alley, the fee and title extend to the center of the alley. Although *Carter* involved a county road and *Seefus* involved an alley, both cases are consistent with *Lillich* in that the creation of isolated strips of land is disfavored, and the transfer of an entire estate will be inferred. Courts in other jurisdictions generally have concluded that where land is described as abutting or being bounded by a public easement, the transfer of the abutting land includes a transfer of a fee interest to the center of the easement. See, *Vaughn v. Fitzgerald*, 511 P.2d 1148 (Ok. App. 1973); *Koviak v. Union Electric Company*, 442 S.W.2d 934 (Mo. 1969); *Carpenter v. Fager*, 188 Kan. 234, 361 P.2d 861 (1961). These principles have specifically been applied to railroad rights-of-way.

Applying the rule enunciated in *Carter* and *Seefus*, Heyden's subdivision of the larger tract, into lots described as being bounded by the subject right-of-way and not specifically including or excluding the railroad right-of-way, will be construed as having transferred both his rights in the described lots as well as in the servient estate underlying the easement, and the parcels abutting the abandoned railroad right-of-way will be construed as extending to the center of the abandoned railroad right-of-way. This conclusion is consistent with *State v.*

*Union Pacific RR. Co.*, 241 Neb. 675, 490 N.W.2d 461 (1992), *modified* 242 Neb. 97, 490 N.W.2d 461. In *Union Pacific RR. Co.*, the State had acquired property abutting the railroad line by warranty deeds. The Nebraska Supreme Court acknowledged that

> [i]f the estates conveyed to the Railroad's predecessors in title were easements, as the State contends, the law of Nebraska is clear that on abandonment of railroad use, title to the land contained within the right-of-way would revert to the *adjoining* landowner, which is the State in these cases.

(Emphasis supplied.) *Id.* at 678-79, 490 N.W.2d at 464. See *Lillich, supra.*

The evidence presented by the City does not show that any predecessor in interest to condemnees specifically retained a fee interest in the land underlying the easement, and therefore, we find that condemnees are the owners of the abandoned railroad right-of-way abutting Lots 7, 8, 9, and 22 and that these parcels extend to the center of the abandoned railroad right-of-way. Accordingly, for purposes of valuing the compensation to which condemnees are entitled, Lots 7, 8, 9, 22, and 23 must be treated as contiguous. The trial court's conclusion that the condemnees were not owners of the land underlying the abandoned railroad right-of-way was error, and the corresponding ruling, excluding evidence of valuation based on tracts including the servient estate underlying the abandoned railroad right-of-way and, for valuation purposes, refusing to treat Lots 7, 8, 9, and 22 as contiguous to Lot 23, was prejudicial error.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.