Ricky Robert HINOJOS and Pamela Sue Hinojos, Plaintiffs–Appellants and Cross–Appellees,

and

Roberta Janzen and Corinne M. Ocker, Defendants–Appellants and Cross–Appellees,

v.

Arthur LOHMANN, Defendant–Appellee and Cross–Appellant,

and

Veronica A. Lewis and Earl Grosshans, Sr., Intervenors–Appellees.

No. 06CA0998.

Colorado Court of Appeals, Div. I.

Jan. 10, 2008.*

* Prior Opinion Announced Oct. 18, 2007, With- drawn; Petition for Rehearing Granted.

Anderson and Chapin, P.C., Robert B. Chapin, Brush, Colorado, for Plaintiffs–Appellants and Cross–Appellees.

Epperson and McClary, P.C., Andrew F. McClary, Fort Morgan, Colorado, for Defendants–Appellants and Cross–Appellees.

Terrence A. Johnson, L.L.C., Terrence A. Johnson, Colorado Springs, Colorado, for Defendant–Appellee and Cross–Appellant and Intervenors–Appellees.

Opinion by Judge J. JONES.

This quiet title case concerns property over which the Union Pacific Railroad Company once had a right-of-way. The parties submitted their claims to the district court on

stipulated facts and exhibits. The district court ruled that intervenor Veronica Lewis has fee simple title to all of the right-of-way property within the east half of the southwest quarter of Section 12, Township 4 North, Range 56 West of the 6th Principal Meridian (the E ½ SW ¼), in Morgan County (except a small portion owned by the County); that defendant Roberta Janzen has fee simple title to a portion of the right-of-way property within the southeast quarter of the northwest quarter of the same Section 12 (the SE ¼ NW ¼); and that Donna R. Arvizo and Earl Grosshans, Jr., as the heirs of intervenor Earl Grosshans, Sr., have fee simple title to a separate portion of the right-of-way property within the SE ¼ NW ¼. The Appendix to this decision is a map showing the locations of the railroad right-of-way and the parties' respective properties in relation thereto.

Plaintiffs, Ricky Robert and Pamela Sue Hinojos, and defendants Janzen and Corrine M. Ocker appeal from that order, asserting that their claims to title to portions of the right-of-way property within the E ½ SW ¼ (specifically, portions between the northwest edge of the right-of-way and the centerline of the railway line) are superior to Lewis's. Defendant Arthur Lohmann cross-appeals, asserting a leasehold right in a portion of the right-of-way property within both the E ½ SW ¼ and the SE ¼ NW ¼, and challenging the claims of Janzen, Arvizo, and Earl Grosshans, Jr. to the right-of-way property in the SE ¼ NW ¼.

After reviewing the parties' respective claims to the right-of-way property de novo, we affirm the district court's judgment in part, reverse it in part, and remand the case for further proceedings.

## I.  Proceedings in the District Court

The Hinojoses filed a complaint pursuant to C.R.C.P. 105 to quiet title in themselves in a parcel of land underlying an abandoned railroad right-of-way located in the E ½ SW ¼. They named as defendants Lohmann, Janzen, Ocker, Morgan County, the State of Colorado, and all unknown persons who might claim an interest in the property.

Lohmann asserted claims to property in both the E ½ SW ¼ and SE ¼ NW ¼ based on a lease from Union Pacific. Janzen likewise asserted claims to land in both section quarters, but disclaimed any interest in the specific property claimed by the Hinojoses. Ocker asserted a claim to land in the E ½ SW ¼. Morgan County claimed title to land in both section quarters over which certain county roads had been constructed. The state, acting through the Department of Transportation, initially disclaimed any interest in the property claimed by the Hinojoses.

Lewis intervened in the action. She claimed title to all the right-of-way property in the E ½ SW ¼. Earl Grosshans, Sr. also intervened in the action. He claimed title to a portion of the right-of-way property in the SE ¼ NW ¼. He subsequently quitclaimed his property to Arvizo and Earl Grosshans, Jr.

In the course of the litigation, the state entered into a stipulation with the other parties whereby the parties agreed that the state holds fee simple title to Colorado State Highway 71, which crosses the west end of the right-of-way property in the E ½ SW ¼, running roughly from north to south. The court approved that stipulation.

Similarly, shortly before trial, the county reached a settlement agreement with all other parties except Lohmann whereby the settling parties stipulated that the county should have fee simple title to the property it claimed, which included a portion of First Street in the Town of Snyder lying in the east end and along the northwest edge of the right-of-way property, almost entirely within the SE ¼ NW ¼ (a very small portion is located in the E ½ SW ¼). The court approved that stipulation and entered it as an order of the court.

The parties ultimately submitted their respective claims to the court on stipulated facts and exhibits. The court ruled as noted above, and later amended its judgment to account for the stipulation regarding the property claimed by the state.

## II.  Standard of Review

Because the district court decided this case based on stipulated facts and exhibits, we do

not defer to the district court's factual findings. Instead, "we are obligated to make an independent judgment on the merits." *Bolser v. Bd. of Comm'rs,* 100 P.3d 51, 53 (Colo. App.2004); *see also Jelen and Son, Inc. v. Kaiser Steel Corp.,* 807 P.2d 1241, 1244 (Colo. App.1991); *Atchison, Topeka & Santa Fe Ry. Co. v. North Colorado Springs Land & Improvement Co.,* 659 P.2d 702, 703 (Colo. App.1982). We review the district court's conclusions of law de novo. *See Bolser,* 100 P.3d at 53; *Golden Lodge No. 13 v. Grand Lodge of Independent Order of Odd Fellows,* 80 P.3d 857, 859 (Colo.App.2003).

## III. Facts

The Hinojoses, Janzen, Ocker, and Lohmann do not challenge the district court's findings of historical fact. Rather, they challenge certain conclusions the district court reached based on those historical facts. Because the historical facts provide background necessary for analyzing the issues raised on appeal, we summarize them below.

### A. The Railroad Right–of–Way

The abandoned railroad right-of-way at issue in this case is a 400–foot–wide strip of land running diagonally, roughly southwest to northeast, through both the E ½ SW ¼ and the SE ¼ NW ¼. Union Pacific, or its predecessor, obtained the right-of-way sometime in the early 1880s by a grant from the United States. That grant was made pursuant to an Act of Congress of March 3, 1875, 18 Stat. 482 (1875) (subsequently codified at 43 U.S.C. § 934) (the 1875 Act). By statute, the right-of-way for the railway line itself was measured from the centerline of the railway line, extending 100 feet on each side. 43 U.S.C. § 934. Apparently, the railroad also received a right-of-way for station grounds extending 200 feet from the northwest edge of the railway line right-of-way. *See* 43 U.S.C. § 934 (providing that a railroad may also take land from the public lands adjacent to the railway line right-of-way for, among other things, railroad depots and related improvements).

On February 28, 2002, Union Pacific executed a "Disclaimer" of "any right, title or interest in" the railroad right-of-way in Section 12. Union Pacific recorded that Disclaimer in the records of the Morgan County Clerk and Recorder on March 5, 2002.

On May 16, 2003, the district court entered an order in this case declaring the railroad right-of-way abandoned by Union Pacific.

### B. Chains of Title to Properties in the E ½ SW ¼

On November 3, 1892, the United States issued a patent to the E ½ SW ¼ to D. Eugene Risendorph. The patent did not mention the right-of-way.

In the 1890s, the E ½ SW ¼ was conveyed a number of times; none of the deeds effecting those conveyances mentioned the railroad right-of-way. The first deed purporting to convey the E ½ SW ¼ that expressly mentioned the railroad right-of-way itself was a deed from Sarah E. Davis to T.F. Kearns dated May 25, 1901, and recorded on May 31, 1901. That deed conveyed the E ½ SW ¼, "subject to" the railroad right-of-way.

In 1905, T.F. Kearns conveyed the E ½ SW ¼ to G.D. Foy, "except," as relevant in this case, the railroad right-of-way and twenty acres on the south end of the E ½ SW ¼. From 1917 to 1919 this property was conveyed several times, culminating in the deed from Varney E. Terrill to P.V. Barth and M.E. Weir dated July 11, 1919. The granting clause in each of these deeds purported to convey the E ½ SW ¼ "save and except" the south twenty acres and "except" the railroad right-of-way.

On July 12, 1919, P.V. Barth and Weir conveyed "[a]ll land of" the E ½ SW ¼ "lying northwest of" the railroad right-of-way to Jay H. Prothero. On March 29, 1920, Weir conveyed his undivided one-half interest in that part of the E ½ SW ¼ "lying and being [s]outh of" the railroad right-of-way to Theodore Metz. That deed did not mention the south twenty acres of the E ½ SW ¼. On August 8, 1921, P.V. Barth conveyed his undivided one-half interest in the north sixty acres of the E ½ SW ¼ "except all of the land lying north and west of" the railroad right-of-way to Peter Barth, Sr. Shortly thereafter, Peter Barth, Sr. conveyed that undivided one-half interest to Metz. As with the deed

from P.V. Barth to Peter Barth, Sr., the description of the conveyed property in the granting clause of the deed from Peter Barth, Sr. to Metz excluded "all of the land lying north and west of" the railroad right-of-way.

From August 1924 to July 10, 1973, the property in the E ½ SW ¼ owned by Metz was conveyed four times: from Metz to Peter H. Peterson on August 12, 1924; from Peterson to Nick Dimitroff and James Louis on June 1, 1927; from Dimitroff and Louis to Louis on October 12, 1972; and from Louis to Len E. Lewis and Veronica A. Lewis, as joint tenants, on July 10, 1973. Each of the granting clauses in the four deeds effecting those conveyances described the property conveyed as the E ½ SW ¼ except the south twenty acres and "except" or "excepting" "all land lying north and west of" or "all land [n]orth and [w]est of" the railroad right-of-way.

The Hinojoses and Ocker derive title to their properties through a chain of title leading back to Prothero. No party submitted any deeds in that branch of the chain of title to the district court. Nonetheless, no party claims that any such deed purported to expand on the grant to Prothero, and the Hinojoses, Janzen, and Ocker concede that their properties are merely "adjacent to" the former railroad right-of-way.

### C. Chains of Title to Properties in the SE ¼ NW ¼

On October 17, 1887, the United States issued a patent to the S ½ NW ¼ to Martin L. Stevens. The patent did not mention the railroad right-of-way.

The first deed in the chain of title to the SE ¼ NW ¼ to mention the railroad right-of-way is a deed dated June 5, 1897 from the Iliff Land Company to H.B. Davis. It conveyed the SE ¼ NW ¼, except a piece of land 100 feet square fronting on the railroad right-of-way.

In 1898, H.B. Davis recorded a plat for the Town of Snyder, along with a metes and bounds description of the property included within the plat which, as relevant here, effectively excluded the railroad right-of-way by

describing a portion of the southern boundary of the parcel as running along the northwest edge of the right-of-way. The plat shows the railroad right-of-way as the "Railway Park." The parties did not present evidence of any subsequent conveyance from H.B. Davis purporting to convey land underlying the railroad right-of-way, and, therefore, he is the last person in the chain of title possessing paper title to the land underlying the railroad right-of-way in the SE ¼ NW ¼.

Janzen owns lots in Block 11 of the town plat abutting First Street (a county road) as it runs east to west and as it curves northeasterly to become Winchell Avenue. Part of that section of First Street abuts and partially lies within the northwest edge of the railroad right-of-way in the SE ¼ NW ¼, and a short part of that section of First Street abuts the railroad right-of-way in the E ½ SW ¼.

Arvizo and Earl Grosshans, Jr. own Block 12 of the town plat. Block 12 lies to the east of the lots owned by Janzen in Block 11 and, until the district court approved the parties' stipulation regarding the county's claim, abutted the railroad right-of-way.

### D. Lohmann's Lease

Lohmann claims an interest in land within both the E ½ SW ¼ and the SE ¼ NW ¼, entirely within the railroad right-of-way, by virtue of an agricultural lease he entered into with Union Pacific in 1990.

By letter dated June 30, 2000, Union Pacific purported to terminate the lease because of Lohmann's breach. Section 7 of the lease allows for termination of the lease by such a letter. Lohmann, however, did not vacate the property. Nor did Union Pacific take legal action to evict him from the property prior to its abandonment of the right-of-way.

### IV. Governing Law

#### A. Quiet Title

Quiet title actions are governed by C.R.C.P. 105, which authorizes "[a]n action ... brought for the purpose of obtaining a complete adjudication of the rights of all parties thereto, with respect to any real

property and for damages, if any, for the withholding of possession." C.R.C.P. 105(a).

■ The plaintiff in a quiet title action has the burden of establishing title superior to that claimed by the defendant. *Hutson v. Agricultural Ditch & Reservoir Co.,* 723 P.2d 736, 738 (Colo.1986). Thus, the plaintiff may not capitalize on the weakness of the defendant's claim to title, but can succeed only by establishing the strength of his or her own claim to title. *School Dist. No. Six v. Russell,* 156 Colo. 75, 82, 396 P.2d 929, 932 (1964); *Fastenau v. Engel,* 129 Colo. 440, 443–45, 270 P.2d 1019, 1020–21 (1954); *Webermeier v. Pace,* 37 Colo.App. 546, 550, 552 P.2d 1021, 1025 (1976), *aff'd,* 193 Colo. 157, 563 P.2d 950 (1977). Accordingly, if the facts fail to show that the plaintiff has title, he or she may not attack the sufficiency of the evidence on which the court adjudged title to be in the defendant. *Bock v. Bd. of County Comm'rs,* 520 P.2d 149, 151 (Colo.App.1974) (not published pursuant to C.A.R. 35(f)).

### B. Federally Granted Railroad Rights–of–Way

In the later half of the 1800s, Congress enacted a number of laws designed to encourage expansion and interconnection of railroads. Initially, Congress granted railroad companies rights-of-way along the railway lines and title to enormous amounts of public lands adjacent thereto. *See Leo Sheep Co. v. United States,* 440 U.S. 668, 670–77, 99 S.Ct. 1403, 59 L.Ed.2d 677 (1979) (discussing at some length the history of railroad development in the United States in the 1800s); *Great Northern Ry. Co. v. United States,* 315 U.S. 262, 273–74, 62 S.Ct. 529, 86 L.Ed. 836 (1942); *Marlow v. Malone,* 315 Ill.App.3d 807, 248 Ill.Dec. 487, 734 N.E.2d 195, 198 (2000); *Barney v. Burlington Northern R.R. Co.,* 490 N.W.2d 726, 729–30 (S.D.1992), *overruled on other grounds by Brown v. Northern Hills Regional R.R. Auth.,* 732 N.W.2d 732 (S.D.2007).

This practice was highly controversial, however, and in 1872 the House of Representatives passed a resolution condemning the policy of outright land grants to railroads. *See Leo Sheep Co.,* 440 U.S. at 677, 99 S.Ct. 1403; *Great Northern Ry.,* 315 U.S. at 273–

74, 62 S.Ct. 529; *Barney,* 490 N.W.2d at 729. Reflecting this change in policy, Congress enacted the 1875 Act (as noted, the statute pursuant to which Union Pacific received the right-of-way at issue in this case), which conveyed rights-of-way through public lands of the United States to railroad companies but did not convey title to any adjacent public lands. *See Barney,* 490 N.W.2d at 729.

In 1903, the United States Supreme Court held that a right-of-way granted to a railroad company pursuant to an Act of Congress of July 2, 1864, 13 Stat. 365 (one of the laws which also conveyed title to adjacent public lands), was a grant of a limited fee, and upon abandonment of the right-of-way by the railroad, the fee interest in the property underlying the right-of-way automatically reverted to the federal government. *Northern Pac. Ry. Co. v. Townsend,* 190 U.S. 267, 270–72, 23 S.Ct. 671, 47 L.Ed. 1044 (1903); *see also H.A. & L.D. Holland Co. v. Northern Pac. Ry. Co.,* 214 F. 920, 923–24 (9th Cir.1914). In 1915, the United States Supreme Court interpreted the 1875 Act similarly. *Rio Grande Western Ry. Co. v. Stringham,* 239 U.S. 44, 47, 36 S.Ct. 5, 60 L.Ed. 136 (1915). Twenty-seven years later, however, the United States Supreme Court effectively overruled *Stringham,* holding that a right-of-way granted to a railroad company pursuant to the 1875 Act gave the railroad company a mere easement rather than a limited fee interest. *Great Northern Ry.,* 315 U.S. at 272–79, 62 S.Ct. 529; *see Bijou Irrigation Dist. v. Empire Club,* 804 P.2d 175, 181–82 (Colo.1991).

In the 1920s, Congress enacted statutes intended to address how land underlying railroad rights-of-way should be distributed once railroad companies ceased using them for railway purposes. *See* 23 U.S.C. § 316 (1921); 43 U.S.C. § 912 (1922); 43 U.S.C. § 913 (1920). Throughout this case, the parties have assumed that one such statute, 43 U.S.C. § 912, applies, and, therefore, we will assume so as well. *But see Brown,* 732 N.W.2d at 736–40 (holding that section 912 does not apply where, as here, (1) the right-of-way was granted pursuant to the 1875 Act, and (2) the patent subsequently issued by the United States did not purport to reserve any

interest to the United States). That statute provides, in relevant part as follows:

> Whenever public lands of the United States have been or may be granted to any railroad company for use as a right of way for its railroad or as sites for railroad structures of any kind, and use and occupancy of said lands for such purposes has ceased or shall hereafter cease, whether by forfeiture or by abandonment by said railroad company declared or decreed by a court of competent jurisdiction or by Act of Congress, then and thereupon all right, title, interest, and estate of the United States in said lands shall, except such part thereof as may be embraced in a public highway legally established within one year after the date of said decree or forfeiture or abandonment be transferred to and vested in any person, firm, or corporation, assigns, or successors in title and interest to whom or to which title of the United States may have been or may be granted, conveying or purporting to convey the whole of the legal subdivision or subdivisions traversed or occupied by such railroad or railroad structures of any kind as aforesaid, except lands within a municipality the title to which, upon forfeiture or abandonment, as herein provided, shall vest in such municipality, and this by virtue of the patent thereto and without the necessity of any other or further conveyance or assurance of any kind or nature whatsoever . . . .

Based on its plain language, we construe section 912 as requiring a claimant to establish title to the property underlying the right-of-way. It expressly authorizes the transfer of whatever reversionary interest was held by the United States to "any person, firm, or corporation, assigns, or successors in title and interest to whom or to which title of the United States may have been or may be granted . . . ." 43 U.S.C. § 912. This language clearly indicates that a claimant to the reversionary interest can succeed only if he, she, or it is the holder of title conveyed by the United States, an assignee of such title holder, or a successor in title to such a person or entity. Other courts that have considered the issue agree, based both on the plain language of the statute and its legislative history. *E.g., Smith v. Malone,* 317 Ill.App.3d 974, 252 Ill.Dec. 247, 742 N.E.2d 785, 789–90 (2000); *Marlow,* 248 Ill. Dec. 487, 734 N.E.2d at 200–01; *Keife v. Logan,* 119 Nev. 372, 75 P.3d 357, 360–61 (2003); *see also Marshall v. Chicago & Northwestern Transp. Co.,* 31 F.3d 1028, 1031 (10th Cir.1994) (dictum); *City of Buckley v. Burlington Northern R.R. Corp.,* 106 Wash.2d 581, 723 P.2d 434, 437 (1986) (dictum).

## V. Conclusions

### A. The Hinojoses', Janzen's, and Ocker's Appeal: the E ½ SW ¼

As noted, the Hinojoses, Janzen, and Ocker concede that their chains of title establish, at best, that their properties are adjacent to the railroad right-of-way. No other construction of the deeds in the Hinojoses' and Ocker's chains of title is supportable in light of the language of those deeds conveying property in the E ½ SW ¼ "lying north and west of" the railroad right-of-way. *Cf. Smith,* 252 Ill.Dec. 247, 742 N.E.2d at 789 (conveyance of property "lying [west] of" the railroad right-of-way excluded land underlying the right-of-way); *Marlow,* 248 Ill.Dec. 487, 734 N.E.2d at 203 (same). Janzen's property actually abuts a county road, which in turn abuts (and lies partially within) the railroad right-of-way. Indeed, Janzen's lots are entirely within the SE ¼ NW ¼ according to the town plat.

Nonetheless, these parties claim title to the centerline of the railway line (a width of 300 feet) in the E ½ SW ¼, arguing that (1) deeds in Lewis's chain of title excluded land underlying the railroad right-of-way, meaning she, too, owns land that is merely adjacent to the railroad right-of-way; (2) alternatively, the deed in Lewis's chain of title from Weir to Metz did not convey Weir's one-half interest in the land underlying the railroad right-of-way, meaning that Lewis is merely an adjacent land owner as to that one-half interest; (3) by recording notices of their intent to claim the right-of-way before Union Pacific abandoned it, they have "color of title" to it; and (4) therefore, their claims are equal to Lewis's. They further argue that

because their claims to title are equal to Lewis's, we should apply law regarding the abandonment of public streets and conclude that the landowners on each side of the abandoned railroad right-of-way own the land from their respective property lines abutting the right-of-way to the centerline of the railway line. We reject these arguments.

■ The Hinojoses', Janzen's and Ocker's first argument is based on a series of deeds, beginning with the December 26, 1905 deed from Kearns to Foy, that used the phrase "except [railroad] right of way" or "except the right of way for . . . railroads" in the granting clauses. They assert this language dispositively shows the grantors' intent not to convey the land underlying the railroad right-of-way. We disagree.

The Hinojoses, Janzen, and Ocker rely on cases that involved disputes about whether language in deeds constituted "exceptions" or "reservations." Colorado law distinguishes between "exceptions" in deeds and "reservations."

> A reservation, on the one hand, occurs where the granting clause conveys the totality of the land described, but reserves to the grantor one or more of the rights that would comprise a fee simple absolute. An exception, on the other hand, totally excludes a specific portion of the property from the conveyance.

*Bolser*, 100 P.3d at 53; *see also Haymaker v. Windsor Reservoir & Canal Co.*, 81 Colo. 168, 173, 254 P. 768, 770 (1927); *Lincoln Sav. & Loan Ass'n v. State*, 768 P.2d 733, 735 (Colo.App.1988); *Proctor v. Graham*, 32 Colo.App. 102, 105, 506 P.2d 1236, 1238 (1973).

■ Assuming the applicability of these cases here, we note that in interpreting a deed, the issue is one of the grantor's intent. *See Bolser*, 100 P.3d at 53; *Proctor*, 32 Colo. App. at 105, 506 P.2d at 1238. In determining that intent, we must look to the deed as a whole, rather than only isolated sentences. *Michaelson v. Michaelson*, 939 P.2d 835, 839 (Colo.1997); *Bolser*, 100 P.3d at 53. In this context, the use of a term such as "except" in the granting clause of a deed is not dispositive. *See, e.g., Proctor*, 32 Colo.App. at 104–

05, 506 P.2d at 1237–38. If the grantor's intent is not apparent from the deed's language, a court may consider extrinsic evidence of that intent. *See Michaelson*, 939 P.2d at 839.

Here, the district court reasoned that (1) at the time the deeds in question were prepared (1905–1919), the owners appeared to have understood, consistent with the law at the time, *see Stringham; Townsend,* that they could not convey the land underlying the railroad rights-of-way because the railroad company possessed a limited fee interest in the land, but (2) there was no evidence indicating the grantors intended to convey less than what they owned, which, as it later became clear, included the land underlying the railroad right-of-way. We agree with this reasoning. *See Dowd v. City of Omaha,* 2 Neb.App. 958, 520 N.W.2d 549, 554 (1994) (it is generally illogical to assume that a grantor of a tract that includes a railroad right-of-way intends to retain the servient estate underlying the railroad right-of-way while parting with the remainder of the tract).

We also observe that H.B. Davis's deed to Sara Davis dated February 1, 1901 conveyed the E ½ SW ¼, "established Railways . . . excepted." Davis's deed to Kearns dated May 25, 1901 conveyed the property "subject to" the railroad right-of-way. The use of that term ordinarily indicates an intent to convey the reversionary interest pertaining to the encumbrance. *See, e.g., Associated Oil Co. of Wyo. v. Rector,* 97 Colo. 387, 406–07, 50 P.2d 551, 559 (1935). It therefore seems clear that the grantors during this period used "except" and "subject to" interchangeably; the use of the word "except," therefore, does not clearly indicate an intent to exclude the land underlying the railroad right-of-way from the conveyances. *See O'Brien v. Village Land Co.,* 794 P.2d 246, 250 (Colo.1990) (terms "exception" and "reservation," or variations thereof, are often used interchangeably in deeds, and without any intent to ascribe the historical meaning to either); *Haymaker,* 81 Colo. at 173, 254 P. at 770 (same).

Finally, we also note there is no evidence that at any point in the subsequent decades

any heir of any of the grantors of these deeds stepped forward to claim any interest in the land underlying the railroad right-of-way. This further indicates that the grantors intended to convey whatever they owned.

The Hinojoses', Janzen's, and Ocker's second argument fails for similar reasons. Weir's deed to Metz conveyed all of Weir's undivided one-half interest in the property "lying and being south of" the railroad right-of-way. However, the deed also stated that Weir conveyed "[s]ixty-nine (69) [a]cres, more or less," an apparent mistake because Weir did not own the south twenty acres, which had been severed from his chain of title with the Kearns to Foy deed in 1905. This indicates that Weir was less than precise in his description of the property he intended to convey to Metz. There is no indication in the deed or otherwise that Weir intended to retain any portion of his interest in the E ½ SW ¼.

Subsequently, Metz received a deed from Peter Barth, Sr. that conveyed the remaining undivided one-half interest in the property, "except all of the land lying north and west of" the railroad right-of-way. In acquiring that interest from Peter Barth, Sr., Metz apparently believed he owned *all* of the north sixty acres of the E ½ SW ¼ except the land north and west of the railroad right-of-way because he subsequently conveyed the E ½ SW ¼, "except 20 acres" on the south end and "except all land lying north and west of" the railroad right-of-way, to Peterson in 1924. Further, these deeds, including the deed from Weir to Metz, purported to convey, in addition to the property specifically described, all reversions pertaining to the property, thereby indicating an intent not to retain any such interests. *See Barnes v. Winford,* 833 P.2d 756, 758 (Colo.App.1991). Thus, the available evidence establishes that the grantors in this segment of the chain of title (Meir, P.V. Barth, Peter Barth, Sr., and Metz) intended to convey all of the land they owned, which included the land underlying the railroad right-of-way.

The deeds in Lewis's chain of title beginning with the Metz to Peterson deed described the property conveyed as the E ½ SW ¼, except twenty acres on the south end

and except the land lying north and west of the railroad right-of-way. In light of the surrounding circumstances, those exceptions clearly recognized that the south twenty acres and the land lying north and west of the railroad right-of-way had been severed from the remainder of the E ½ SW ¼. *See Proctor,* 32 Colo.App. at 105, 506 P.2d at 1238 (use of the word "excepting" may recognize a previous severance of an estate in land). Divergent chains of title were created by the separate conveyances of those parcels. The chain of title for the E ½ SW ¼ is devoid, however, of any indication that any portion of the E ½ SW ¼ was not intended to be conveyed. There is no evidence of a divergent chain of title with respect to the land underlying the railroad right-of-way.

In sum, we agree with the district court's conclusion that Lewis holds title to the land underlying the abandoned railroad right-of-way within the E ½ SW ¼.

■ We are unpersuaded by the Hinojoses', Janzen's, and Ocker's attempt to put their claims on the same footing as Lewis's by asserting that they have "color of title" to portions of the abandoned railroad right-of-way from the southern boundaries of their properties up to the centerline of the railway by virtue of the notices they recorded in 1994, 1995, and 2004.

■ "Color of title is defined as that which in appearance has the semblance of title, either legal or equitable, but which in fact is no title. Thus, color of title 'can only arise out of a conveyance purporting to convey title' to real property, but which, because of some defect, fails to do so." *First Nat'l Bank of Wray v. McGinnis,* 819 P.2d 1080, 1083 (Colo.App.1991) (citations omitted; quoting in part *Sayre v. Sage,* 47 Colo. 559, 568, 108 P. 160, 164 (1910)).

The notices filed by the Hinojoses, Janzen, and Ocker are not conveyances purporting to convey title; they are nothing more than naked claims to title. Therefore, the notices did not give the Hinojoses, Janzen, or Ocker color of title to any portion of the abandoned railroad right-of-way.

Because Lewis is the holder to title of the underlying land in the E ½ SW ¼, her claim

must prevail over those of the Hinojoses, Janzen, and Ocker, who are at most adjacent landowners. *See Smith*, 252 Ill.Dec. 247, 742 N.E.2d at 789–90 (adjacent landowner did not have title to land underlying former railroad right-of-way, and therefore could not claim title pursuant to section 912); *Marlow*, 248 Ill.Dec. 487, 734 N.E.2d at 203 (same); *Keife*, 75 P.3d at 358–61 (same; owner of title pursuant to conveyance of fee by railroad entitled to prevail). Simply put, Lewis established title as required by section 912; the Hinojoses, Janzen, and Ocker did not.

### B. Lohmann's Cross–Appeal: the SE ¼ NW ¼

In the proceedings in the district court, Lohmann claimed an interest in the property within the former railroad right-of-way by virtue of his possession of property under the lease from Union Pacific. He asserted the lease was still in effect because, though Union Pacific purported to terminate it in 2000, Union Pacific did not have grounds to do so, and that as the party in possession of the property, his interest therein was superior to that of all others claiming an interest in the property.

The district court ruled that Lohmann's lease terminated when Union Pacific abandoned its easement, and that he therefore "has no estate, right, title, lien or interest in the property." The district court also found that Janzen, Arvizo, and Earl Grosshans, Jr. have superior claims to title to land within the SE ¼ NW ¼ because their properties abut the former railroad right-of-way and H.B. Davis intended that any abandoned property within the tract he platted to create the Town of Snyder would go to abutting landowners.

■ On appeal, Lohmann claims the court erred in determining that his claim to property within the SE ¼ NW ¼ is inferior to those of Janzen, Arvizo, and Earl Grosshans, Jr. He does not challenge the court's ruling with respect to property within the E ½ SW ¼. We conclude that although the district court correctly ruled that Lohmann lacks any interest in any portion of the abandoned right-of-way with the SE ¼ NW ¼, further

proceedings are required with respect to that parcel.

■ Initially, we conclude the court's ruling with respect to Lohmann's claimed interest was correct. Where the lessor's estate in the leased property is extinguished, the lessee's property rights under the lease are also extinguished. *See, e.g., Reilly v. Firestone Tire & Rubber Co.*, 764 F.2d 167, 171 (3d Cir.1985) (applying Pennsylvania law); *Dolese v. Bellows–Claude Neon Co.*, 261 Mich. 57, 245 N.W. 569, 570 (1932); *State ex rel. Missouri Highway & Transp. Comm'n v. Muegge*, 842 S.W.2d 192, 198 (Mo.Ct.App. 1992); *New York Life Ins. Co. v. Simplex Products Corp.*, 135 Ohio St. 501, 21 N.E.2d 585, 587 (1939); *see also* 2 Richard R. Powell, *Powell on Real Property* § 16.03[7][d] (Michael Allan Wolf ed.2007) ("a term of years ends whenever the landlord's estate ends"). The railroad's estate in the right-of-way was extinguished when it formally abandoned the right-of-way and the court declared the right-of-way abandoned. Consequently, Lohmann's interest, if any, in the property by virtue of the previously terminated lease was extinguished.

■ Under the circumstances, Lohmann's status as one in possession of property is insufficient to give him any colorable claim to title. A party's possession of real property is merely prima facie evidence of title. *Weise v. Barker*, 7 Colo. 178, 181, 2 P. 919, 921 (1884). Lohmann's evidence of title was conclusively rebutted in this case by evidence that his interest in the property under the lease was extinguished. At this point, Lohmann is no more than a trespasser, and trespass " 'cannot form the basis for the acquisition of title.' " *Id.* (quoting *Lebanon Mining Co. v. Consolidated Republican Mining Co.*, 6 Colo. 371, 380 (1882)).

Nevertheless, we conclude that the district court must make additional findings with respect to the SE ¼ NW ¼.

The district court found that Janzen has a valid claim to title by virtue of her status as an abutting landowner. The record, however, shows that her property does not abut the abandoned right-of-way. Rather, it abuts a

county road, which in turn abuts the abandoned right-of-way.

Also, the district court's finding that Arvizo and Earl Grosshans, Jr. are abutting landowners appears to be inconsistent with its acceptance of the parties' stipulation concerning the county's claim. The maps in the record showing the county's claim appear to show it claimed (and was granted fee title to) a strip of land abutting the lot owned by Arvizo and Earl Grosshans, Jr. Thus, Arvizo's and Earl Grosshans, Jr.'s property merely abuts county land.

We also observe that the district court's conclusions concerning the parties' claims assume the right-of-way was included within the plat created by H.B. Davis in 1898. As noted, however, the description of the property included within the plat appears to exclude the right-of-way because it states that the northwest edge of the right-of-way makes up part of the southern boundary of the plat.

Under these circumstances, we believe the most prudent course of action is to reverse the district court's judgment as to the SE ¼ NW ¼ and remand the case to the district court for further proceedings. The court should reconsider the parties' claims and make findings resolving title to all abandoned right-of-way property within the SE ¼ NW ¼. In particular, the court should consider that the county owns property abutting the right-of-way and that Janzen, Arvizo, and Earl

Grosshans, Jr. apparently do not. *See Keith v. Kinney*, 961 P.2d 516, 519 (Colo.App.1997) (in a proceeding under C.R.C.P. 105(a), the court should completely determine the rights of all parties claiming interests in the property, and should resolve all issues apparent from the evidence). Whether resolving the issue of title requires participation by persons or entities who are not parties to this appeal, or consideration of additional facts and legal principles, are matters the district court should resolve in the first instance.

## VI. Attorney Fees

■ Lewis moves for an award of attorney fees and costs she has incurred on appeal pursuant to C.A.R. 38(d), asserting that the Hinojoses', Janzen's, and Ocker's appeal is frivolous. We conclude, however, that the basis for their appeal is not so futile, irrational, or unjustified as to warrant a finding that their appeal is frivolous. *See Copeland v. Lincoln*, 166 P.3d 245, 248 (Colo.App.2007); *Allen v. Nickerson*, 155 P.3d 595, 602 (Colo. App.2006). Accordingly, we deny Lewis's motion.

The district court's judgment is affirmed in part and reversed in part. The case is remanded for further proceedings consistent with this opinion.

Judge MÁRQUEZ and Judge TAUBMAN concur.

# APPENDIX